Eugenio Reyes **GUINTO**, Petitioner,

v.

**DISTRICT DIRECTOR OF the U. S. IM-
MIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

Civ. No. 69–440.

United States District Court
C. D. California.

July 11, 1969.

Hiram W. Kwan, Los Angeles, Cal., for petitioner.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Div., Carolyn M. Reyn-

olds, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

## MEMORANDUM OF OPINION AND ORDER

IRVING HILL, District Judge.

This is a Petition to review a decision of the Immigration and Naturalization Service (hereinafter called "I.N.S."). Petitioner is a citizen of the Philippine Islands who came to this country in 1967 as a visitor. On July 17, 1968, he applied for a third preference classification visa as a teacher. The application does not specifically so state, but it is clear that Petitioner seeks admission as an elementary school teacher and would not attempt to teach here at the secondary or collegiate level. The application was denied by the District Director. That denial was affirmed on appeal by the Regional Commissioner. A motion before the Regional Commissioner to reopen and re-consider the denial was similarly denied.

The Petitioner is 42 years old and unmarried. In 1949, at the age of 23, he graduated from an institution of learning called "Pampanga Institute" at Macabebe, Pampanga, Philippine Islands, and received an elementary teacher's certificate. He studied at the Pampanga Institute for three semesters and two summer quarters, the equivalent of at least two years. A transcript of his credits is in the Administrative file. Tr. p. 31) They include courses ordinarily taught in this country as part of a college curriculum in education. Among the subjects which he studied were Art Education, Vocational Education, Elementary Methods, History of Education, Observation and Participation of Teaching, Educational Measurements, Educational Psychology, Principles of Teaching, Practice Teaching and Philippine Educational System (Tr. p. 31). The transcript of credits indicates that these courses were taught in the "College Department" of the Pampanga Institute. (It is interesting to note that the District Director characterizes these courses as "a two-year junior college course" (Tr. p. 18),

but the Regional Commissioner, without any basis in the record that I can find, denigrates this training to the level of "high school" (Tr. p. 15).)

Thereafter Petitioner satisfactorily passed a government civil service examination for employment as a teacher. He has been employed as an elementary school teacher in the Philippine Islands *for 18 years*. The Bureau of Public Schools of the district in which he has taught has awarded him a performance rating of "Very Satisfactory" as to his professional competence (Tr. p. 29).

The Court is informed by the Philippine Consulate at Los Angeles that all instruction in the elementary schools of the Philippine Islands after the second grade is in the English language. All of the Philippine government documents in the file and all documents relating to Petitioner's schooling, appear to be official forms printed entirely in the English language. It seems a fair inference that the Petitioner was educated in the English language and has spent his 18 years as a teacher teaching in that language. The relevance of those facts, if they are true, will appear *infra*.

The matter originally was before the Court by virtue of a motion of the government (filed March 29, 1969) for summary judgment. At the hearing of said motion on April 22, 1969, counsel for both sides stipulated that whether the motion was granted or denied, no further trial or other proceedings would be required in this Court. Counsel agreed and stipulated that if the said motion was denied, the Court could and should grant the petition for judicial review and set aside the administrative denial of the third preference visa, thereafter remanding the matter to I.N.S. for further proceedings. For reasons which will be stated *infra,* the summary judgment motion will be denied, the judicial review will be granted, the denial of the visa will be set aside, and the matter will be remanded to the Service for further proceedings in accordance herewith.

A description of the scheme of the statutes and regulations concerning third

preference visas is contained in the opinion of this Court in Tang v. District Director, 298 F.Supp. 413 (C.D.Cal.1969). Petitioner asserts that he is entitled to the third preference visa as a "member[s] of the professions" under 8 U.S.C. § 1153(a) (3).[1] The Respondent claims that the decision denying the visa must be affirmed for two reasons:

1. Petitioner has not shown he is a "member of the professions" under the above-cited statute.

2. Even if the Petitioner has shown he is a "member of the professions" he has not received a certification from the Secretary of Labor as required by 8 U.S.C. § 1182(a) (14).

It must be conceded that both 1 and 2 above are requisites to the instant Petitioner's obtaining his visa. I will deal separately with each requirement as it applies to this Petitioner.

A. Member of the Professions.

■ I.N.S. found that the Petitioner was not a "member of the professions" within 8 U.S.C. § 1153(a) (3). The Court's task in the instant type of judicial review is to determine whether there has been an "abuse of discretion" in the factual determinations made by I.N.S. or in its understanding or application of the law. Dong Yup Lee v. United States Immigration and Naturalization Service, 407 F.2d 1110 (9th Cir. 1969); Loza-Bedoya v. Immigration and Naturalization Service, 410 F.2d 343 (9th Cir. 1969), decided April 16, 1969; Tang v. District Director of Immigration, supra.

The Immigration and Naturalization Service appears to have adopted multiple definitions of the term "member of the professions", definitions which vary according to the particular profession involved. As to the profession of teachers, the Service has said that a person may be regarded as a member of that profession if he has "the educational background usually required throughout the United States" for a teacher. Matter of Delis, 11 I & N Dec. 860, 862 (1966). The

minimum education which will satisfy that educational requirement is expressed as "an educational background which is equivalent to a baccalaureate degree * * *" Matter of Delis, supra; See also Matter of Strippa, 11 I & N Dec. 672, 673 (1966).

However, the Service has also recognized that one may qualify as a member of the teaching profession without having the full educational requirement. Extensive practical experience and lesser specialized training have been held to be an adequate substitute for the degree. Matter of Strippa, supra, which specifically deals with a third preference visa application of a teacher, expresses the concept as follows:

"Cognizance is also taken of the fact that an individual may be accorded recognition as a member of a particular profession where he may lack the requisite high education but has had special training and extensive practical experience in such work."

No cases have been cited in which the Service has granted the third preference visa to teachers seeking to substitute a combination of lesser education plus practical experience for the baccalaureate degree. But, the reported cases relied on by the government in which a third preference visa has been denied to teachers who lack a degree, involve very much less practical experience than is shown by Petitioner in this case. Cf. Delis and Strippa, supra. In cases involving other professions, the Service appears to have accepted, in lieu of a degree, practical experience which seems far less impressive than the practical experience of this Petitioner.

For example, in Matter of Bienkowski, Int. Dec. 1680 (1966), the Service held that economists are a "profession" under the statute and the immigrant was qualified as a member of that profession. As in the case of teachers, a baccalaureate degree was generally regarded as indispensable for professional recognition in

---

1. Elementary and secondary school teachers are explicitly included within the term "profession" as defined in the Act. 8 U.S.C. § 1101(a) (32).

this country. The immigrant involved had at least two years of study left in economics before his foreign university training could be equated with such a degree. As to practical experience, he had served less than a year in any position labeled as that of an economist, though he had had twelve years of practical experience in business organizations as a research analyst, divisional research manager and corporate facilities planner.

In Matter of Arjani, Int. Dec. 1843 (1967), I.N.S. held the immigrant qualified as an accountant. Although a bachelor's degree in accountancy was the generally accepted requisite in this country, the particular petitioner, aged 31 and a native of India, had an education equivalent only to two years of college plus some part-time study thereafter. The deficiencies in his education were held to be overcome by practical experience consisting of nine years of business employment as an "assistant accountant", "assistant secretary of a corporation" and part-time employment by another company in accounting and tax matters.

In Matter of Maher, Int. Dec. 1849 (1968), the immigrant was held to be qualified as a dentist. The Service recognized that his training was so much under the requirements of American training that he would surely be required to spend from two to four years of additional full-time study at an American dental college. In fact, one school of dentistry in the United States had estimated that he would need four years of full-time study to meet established standards. Nevertheless, he was found qualified based on his admission to practice in Egypt and his practical experience which consisted of three years of practicing dentistry as a lieutenant in the Egyptian Army. Without any clear authority in any statute or regulation, the Service applied to a foreign-educated dentist the same extremely favorable treatment accorded a foreign-educated physician by a specific regulation. 8 C.F.R. 204.2(f)(2). For the favored professions a license to practice in their home country will assure their qualifying to be admitted here, regardless of the inadequacies of their foreign education as measured by American standards.

■ Petitioner contends that an abuse of discretion has occurred in the Service's finding that he does not meet the Service's definition as above outlined. I agree. The Service's characterization of Petitioner's formalized education as "high school" may itself be an abuse of discretion.[2] But certainly, the failure to equate the combination of Petitioner's formal education and 18 years of proficient teaching (especially if such teaching was in the English language) with an American bachelor's degree, constitutes a clear abuse of discretion.

In so holding, I have attempted to follow the decisions of the 9th Circuit Court of Appeals as to what constitutes an "abuse of discretion" in this field, particularly Loza-Bedoya, supra, and Dong Yup Lee, supra. And I have borne in mind both definitions of "abuse of discretion" delineated by Judge Friendly in Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715 (2d Cir. 1966). Judge Friendly describes two separate definitions, i. e. (1) the decision being reviewed was "clearly erroneous" and involved a "clear error of judgment"; and (2) the decision reviewed was one which was "arbitrary, fanciful or unreasonable", a decision which no reasonable man would take. I find abuse of discretion in the instant case under each and all of the above-mentioned definitions.

As will be seen infra, this decision will result in Petitioner's application being remanded to I.N.S. for further proceedings. Some brief comments are in order as a possible guide to the Service in its

2. As a further example of the haphazard and inadequate consideration given by I.N.S. to this petition, I note the repeated reference to petitioner as a female in the Regional Commissioner's decision denying the motion to re-open and re-consider. An even cursory examination of the application of the Regional Commissioner's prior decision would demonstrate that petitioner is a man.

further consideration of the matter. On the present record, if it remains unaugmented, it seems to me that the Service should hold that this Petitioner meets the Service's own definition of a member of the teaching profession. Whether he would then be granted the third preference visa as requested would depend on the Labor Department's action in connection with granting him an individual certification. As will be seen *infra*, it is my view that the Labor Department has not yet acted on his request for such a certification on the merits. If the Service sees fit to augment the factual record, various factors could be further explored, e. g. how close the educational courses which Petitioner took were to their equivalents in United States teachers colleges; how far short in professional courses Petitioner is for the requirements of an American bachelor's degree in education; whether Petitioner's schooling and his teaching experience were performed in the English language; whether Petitioner seeks to teach here only in an elementary school, etc. Furthermore, the passage of time since the application was filed may shed additional light on the matter. If Petitioner has now obtained a teaching position of some type in this country that fact would add to his qualifications. Conversely, if he has not succeeded in obtaining a teaching position by this time, the facts underlying such failure could be investigated as a possible additional basis for the denial of the visa application.

B. Labor Department Certification.

I now proceed to consider the claim of the government that the administrative denial of the preference visa should be affirmed because the Petitioner has not received a certification from the Secretary of Labor as required by 8 U.S.C. § 1182(a) (14).

It is necessary to keep in mind the two separate functions performed by the Secretary of Labor in connection with applications for third preference visas. The Labor Department, it seems to me, has two separate roles. The first derives from 8 U.S.C. § 1182(a) (14) and involves the Secretary granting or denying a certification which is an absolute requirement for obtaining this visa. 8 U.S.C. § 1182(a) is set up as an exclusion and provides that certain classes of aliens listed in the section are "ineligible to receive visas". The classes numbered (1) through (13) inclusive are not relevant to this case. The class numbered (14) is as follows:

"(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, *unless the Secretary of Labor has determined and certified* to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed." [Italics supplied]

To emphasize that the above-quoted requirement for certification applies to all applicants for third or sixth preference visas, the section goes on to provide:

"The exclusion of aliens under this paragraph shall apply to * * * to preference immigrant aliens described in §§ 1153(a) (3) [third preference] and 1153(a) (6) [sixth preference] of this title * * *."

Note the nature and scope of the Secretary of Labor's certification under the above-quoted section. He must certify that there are not sufficient workers who are able, willing, qualified and available to perform the type of work which the applicant is going to perform and that the applicant's employment will not adversely affect wages and working conditions of American workers similarly employed.

In adopting regulations under the above-quoted statutory section, the Secretary of Labor has divided the profes-

sions and occupations of applicants into three groups, known as Schedules A, B and C, set out at 29 C.F.R. 60.6. One group, those listed in Schedule A, is granted a so-called "blanket" certification. The operative regulation appears to be 29 C.F.R. 60.2 (1969). Teachers are not among those listed in Schedule A so the instant Petitioner has not been granted any "blanket" certification.

Schedule B could be characterized as "blanket noncertification". It is a list of occupations for which the Secretary of Labor has said he cannot at this time grant any individual certifications. Teachers are not included in Schedule B so the instant Petitioner is not barred under it.

The instant Petitioner must perforce find himself included within Schedule C. Schedule C is a list of occupations which are found to be in short supply generally, although not nationwide, and thus are eligible for individual certification. See 29 C.F.R. 60.3(c). Schedule C is broken down into two groups. Schedule C–I is a long list of specific occupations. It does not include teachers. Schedule C–II includes professionals "whose occupation is not listed on Schedule A". Thus, it appears that teachers are included within Schedule C–II. Schedule C–II appears to require all applicants seeking individual certification to fill out I.N.S. form 575–A or to furnish the same information as is called for in that form. (See the rather unclear language of Schedule C–II as found in 29 C.F.R. 60.6).

Thus far I have been describing the Secretary of Labor's first role, the mandatory role of granting or denying a certification as provided in 8 U.S.C. § 1182 (a) (14) *supra*. Now to the Secretary's other role.

The Secretary of Labor's second role is an advisory one only.[3] He renders an advisory opinion to the Attorney General in every case in which the immigrant seeks a third or sixth preference visa. This derives from 8 U.S.C. §§ 1154(a) and 1154(b). Section 1154(a) provides

for persons seeking such visas to file a petition with the Attorney General. Section 1154(b) provides:

"(b) After an investigation of the facts in each case, and *after consultation with the Secretary of Labor* with respect to petitions to accord a status under § 1153(a) (3) or § 1153(a) (6) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien * * * is eligible for a preference status * * * approve the petition * * *." [Italics supplied]

The statutory requirement for "consultation" with the Secretary of Labor has been amplified in regulations as involving the rendition of an "advisory opinion". The regulations are found at 8 C.F.R. 204.1(c) and 204.2(f) (1968). The latter section deals specifically with applicants seeking a third preference visa as members of a profession. It provides that each applicant shall fill out form ES–575–A and then provides:

"The Service will refer Form ES–575–A and supporting documents to the Bureau of Employment Security, Department of Labor, for a determination with respect to the issuance of a certification under section 212(a) (14) of the Act, unless the alien's occupation is included in the categories of employment for which the Secretary of Labor has issued a blanket certification (Schedule A, 29 C.F.R. Part 60) and the alien clearly comes within the terms of such certification, or unless the alien is clearly not within the purview of section 203(a) (3). *In any individual case the Service may request the Bureau of Employment Security to furnish an advisory opinion concerning the beneficiary's qualifications as a member of the professions * * *"* [Italics supplied]

Thus, it appears that where the applicant for a third preference visa is a teacher who is without a baccalaureate degree but claims that he is entitled to

---

3. Gordon and Rosenfield, Immigration Law and Procedure, § 3.5(b) at 3–16 (1967).

the status of "a member of the professions" because of specialized training and practical experience, the Labor Department would be asked for its advisory opinion on that question.

To summarize, the Secretary of Labor has two separate functions to perform in a case like the case at bar:

1. The determinations, discussed above, under 8 U.S.C. § 1182(a) (14) relating to the sufficiency of American workers to perform the type of work involved and whether the applicant's employment will adversely affect wages and working conditions of Americans similarly employed, and the granting or denial of certification under the section.

2. The advisory opinion, discussed above, as to whether the applicant meets the requirements for a "member of the professions".

Now I will examine what was actually done in the instant case and what determinations, if any, the Labor Department has actually made. The Petitioner filled out I.N.S. Form 575–A (Tr. p. 24). Under date of August 12, 1968, by a printed form of transmittal (Tr. p. 32) Petitioner's Form 575–A was transmitted by I.N.S. to the Labor Department, Bureau of Employment Security, with the following requests for action:

"1. Please consider for issuance of certification, if found qualified."

\*    \*    \*    \*    \*    \*

"4. Please furnish your advisory opinion of the alien's qualifications for the Schedule 'C' occupation in which he seeks employment."

At the end of the Form, I.N.S. gratuitously added the following:

"This Services [sic] finds alien's education and experience not sufficient for professional recognition."

So, in the very act of seeking an advisory opinion from the Secretary of Labor on whether the applicant is qualified as a member of the teaching profession, I.N.S. informed the Labor Department that it had already decided the question against the Petitioner.

Note also the request that the Labor Department consider the transmitted information "for issuance of certification" *if the applicant is found qualified.* Thus I.N.S. seems to be telling the Secretary of Labor that if the latter finds the applicant not qualified as a member of the professions, it will not be necessary to consider on the merits the questions involved in the Labor Department's required certification. Government counsel in the instant case concedes that that is exactly what I.N.S. has said to the Labor Department. Government counsel contends that under the regulations the Secretary of Labor is entitled to make his own independent finding as to whether the applicant is a member of the professions and is relieved from making the individual determinations required for an individual certification if he finds that the applicant does not qualify as a member of the professions. I do not agree. Nor do I read the regulations as conferring any such authority on the Secretary of Labor.[4] If the regulations are so read they may well be *ultra vires.* Cf. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (U.S. May 19, 1969), pp. 15–18.

4. Counsel relies specifically on the wording in the regulation defining Schedule C–II. That regulation reads:

"Any person *qualified as a professional* \* \* \* and whose occupation is not listed on Schedule A." [Italics supplied]

To read into the word "qualified", as used in this context, authority for the Labor Department to make its own final determination on a matter elsewhere granted to the Attorney General for final decision, is a most unreasonable construction. Congress would hardly have intended two departments to make the same determination, each for itself, especially after requiring that one consult with the other. Government counsel can point to nothing in the statute or its legislative history to support the position urged.

It may well be that if the Attorney General, through I.N.S., has finally determined, after "consultation" with the Labor Department, that a particular applicant is not qualified as a member of the professions, the Secretary of Labor would not then be required, in the ordinary case, to consider the questions involved in the applicant's request for individual certification. This would be a sensible administrative practice and procedure. Since the Attorney General's negative determination on professional qualification has made the application moot, there would be no need for the Labor Department to expend the time and effort required to consider the other factors involved in the request for individual certification.

█ But that is not the instant case. Here the Attorney General found that the applicant is not qualified as a member of the professions but that finding was made in a manner which, as stated above, involved an abuse of discretion. The government cannot be heard to say, as government counsel says here, that the denial of the requested preference visa must be affirmed, despite an abuse of discretion by the Attorney General, because the Secretary of Labor has not furnished his required certification. The facts of this case make it clear that the Secretary of Labor never considered this Petitioner's request for certification on the merits.

That conclusion may be documented by examining in detail what the Labor Department did in reply to the above-quoted request for action. The reply consists of a printed form document dated September 27, 1968 (Tr. p. 23). The relevant portions of the reply are as follows:

"2. Qualifications based on documents submitted do not support classification as a member of a profession * * *"

\* \* \* \* \* \*

"6. Other: Alien lacks sufficient academic preparation in the field of education to qualify for certification as a member of the professions under Schedule C, Group II."

Thus it conclusively appears that the Labor Department has examined and ruled only on the question of whether the Petitioner is a member of the professions and never reached the questions involved in the Petitioner's request for individual certification, i. e. whether his employment as an elementary school teacher would adversely affect wages and working conditions of Americans similarly employed and whether there are sufficient workers able, willing, etc. to perform the type of work involved.

█ It is elementary that when a government agency has failed to consider an application on the merits and granting the application is a necessary pre-requisite to the relief sought, its failure to grant the application cannot be urged as barring the Petitioner from relief. Sovich v. Esperdy, 319 F.2d 21, 24 (2d Cir. 1963); Blazina v. Bouchard, 286 F.2d 507, 511 (3d Cir. 1961), cert denied 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242 (1961).

On the re-hearing which this Court is ordering, the Attorney General will be expected to make the determination entrusted to him, on which, as stated, he must "consult" with the Labor Department. And the Secretary of Labor will be expected to make, on the merits, the determination entrusted to him with respect to certification. Thus, if the instant Petition is again denied, both necessary determinations will have been made on the merits and the Court, in the event of another judicial review, can quickly determine whether any abuse of discretion is involved in either determination.

This memorandum shall constitute the Court's findings of fact and conclusions of law.

For the reasons above-stated, it is ordered as follows:

1. The government's motion for summary judgment is denied.

2. Petitioner's petition for judicial review is granted. The administrative

denial of the third preference visa is reversed. The matter is remanded to the Immigration and Naturalization Service for further proceedings in accordance with this opinion and order.

3. The Clerk shall serve copies of this Memorandum of Opinion and Order, by United States mail, this date on all parties to this action and on the Immigration and Naturalization Service.