**ROSEDALE AND LINDEN PARK COMPANY, et al., Plaintiffs,**

v.

**William French SMITH, et al., Defendants.**

**Civ. A. No. 83–2565.**

United States District Court, District of Columbia.

Oct. 9, 1984.

---

Michael Maggio, Maggio & Kattar, Washington, D.C., for plaintiffs.

Diane Sullivan, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

This case is before the Court on cross-motions for summary judgment. Plaintiff seeks reversal of a decision of the Immigration and Naturalization Service (INS) denying plaintiffs' immigrant visa petition. The sole legal issue concerns the determination by the INS that plaintiff Maria Judith Horvath is not eligible for sixth preference immigration classification because of her alleged failure to meet the educational qualifications specified in the certified job offer.

### FACTS

Rosedale and Linden Park Company ("Rosedale") is a non-profit corporation providing cemetery and related services in northern New Jersey. In April of 1980, Rosedale sought certification pursuant to Section 212(a)(14) of the Immigration and Nationality Act,[1] (the "Act") for the position of burial plot salesperson on behalf of Ms. Horvath, a citizen of Uruguay. On the Form MA7–50B Application for Alien Employment Certificate submitted as part of the application, Rosedale listed "2" (two) years of college as minimum requirements for the job offered. Under the heading "College Degree Required," plaintiff wrote "None/some college education preferred." In the space labelled "Major Field of

---

1. 8 U.S.C. § 1182(a)(14).

Study," plaintiff listed "languages/business."

In July, 1981, the Department of Labor approved Rosedale's application, thereby certifying that there were not sufficient workers who were "able, willing, qualified ... and available" for such a position and that the employment of an alien such as Ms. Horvath would not "adversely affect the wages and working conditions of the workers in the United States similarly employed." *See* Section 212(a)(14), 18 U.S.C. § 1182(a)(14).

Rosedale then filed a petition with the INS District Director in Newark to classify Ms. Horvath as a "sixth preference" immigrant pursuant to Section 203(a)(6) of the Act, 8 U.S.C. § 1153(a)(6). On April 15, 1982, the INS District Director denied Rosedale's visa petition on the grounds that Ms. Horvath did not meet the job qualifications for such a position as set forth in the Department of Labor Dictionary of Occupation Titles. The District Director also asserted that despite the certification by the Department of Labor, "it is hard to believe that a U.S. worker with these qualifications does not exist." Upon review of this decision, the Regional Commissioner of the INS remanded the case to the District Director on the ground that "the Service [INS] does not have the authority to delve into the procedural guidelines or procedures of the DOL." However, the Commissioner instructed the District Director on remand to consider "whether the petitioner has established that [Ms. Horvath] possesses the minimum requirements specified on the certified job offer." In particular, the Commissioner questioned whether plaintiffs had established that Ms. Horvath possessed the necessary educational requirements, defined as "two years of college with a major field of study in languages or business." [2]

On remand, the District Director again denied Rosedale's petition. The director concluded that "[n]o evidence has been presented to establish the beneficiary's major field of study ...." The case was again certified for review by the Regional Commissioner.

On November 10, 1982, Rosedale submitted additional evidence in an attempt to establish that Ms. Horvath satisfied the educational requirements set forth in the form MA7–50B application. This evidence included a transcript from Crandon College in Montevideo, Uruguay, which Ms. Horvath attended for two years, as well as an "English language" diploma from the Directive Council of the Cultural Alliance Uruguay-U.S.A.

On January 25, 1983, the Regional Commissioner affirmed the District Director's denial of the visa petition. The Commissioner held that "[t]he transcript [from Crandon College] reflects that the beneficiary's major field of study was in a secretarial course rather than in languages or business as required on the certified job offer." The Commissioner also noted that "[a]lthough some of the courses may be related to business, the curriculum taken by the beneficiary falls considerably short of the requirement on the certified job offer; i.e., two years of college with a 'major field of study in language/business.'" Thus, he concluded that the plaintiffs failed to sustain their burden of proof.

## THE STATUTORY FRAMEWORK

■ One of plaintiffs' principal arguments in this Court is that the INS lacks the *authority* to find that Ms. Horvath is not qualified. According to plaintiffs, the Department of Labor, pursuant to the certification process, possesses sole authority "to deal with the question of immigrant skills in relation to the American labor market." The INS role is limited to "reviewing" the DOL certification for "abuse of discretion" or "misrepresentation." This description of the division of authority between INS and DOL is mistaken; the primary responsibility for examining "qualifi-

---

**2.** The Commissioner also questioned the absence of evidence supporting Ms. Horvath's proficiency in Hungarian or Polish. Evidence presented on remand "clearly establish[ed]" that Ms. Horvath's language abilities would meet the requirements of the certified job offer.

cations" for preferential visas lies with the INS.

Under Section 203(a)(6), aliens "who are capable of performing specified skilled or unskilled labor ... for which a shortage of employable and willing persons exists in the United States" are qualified for sixth preference visa classification. 8 U.S.C. § 1153(a)(6). Section 212(a)(14) preconditions sixth preference visa classification on DOL certification by providing that aliens described in section 203(a)(b) shall be ineligible to receive visas unless "the Secretary of Labor has certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers [in the United States] who are able, willing, qualified ... and available ... and (B) the employment of such alien will not adversely affect the wages and working conditions of the workers in the United States similarly employed." 8 U.S.C. § 1182(a)(14).

It is clear that the certification of the Secretary of Labor is limited to issues focusing on the impact of the alien on the American workforce. The ultimate determination of the alien's qualification for preferential visa status is delegated to the INS. Section 204 of the Act, entitled "Procedure for Granting Immigrant Status," provides: "After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 203(a)(3) or (6), the Attorney General[3] shall, if he determines that the facts stated in the petition are true and that the alien ... is eligible for a preference status under section 203(a), approve the petition and forward one copy thereof to the Department of State." 8 U.S.C. § 1154(b). Thus, contrary to the suggestion of plaintiff, the determination of "eligibility"—including educational qualifications—is well within the statutory mandate of the INS.

This view of the division of authority between DOL and INS is supported by the recent opinion of the District of Columbia Circuit in *Madany v. Smith,* 696 F.2d 1008 (D.C.Cir.1983). In construing a similar preferential status provision, Section 203(a)(3), the court in *Madany* held that "[t]here is no doubt that the authority to make preference classification decisions rests with the INS. The language of section 204 cannot be read otherwise." *Id.* at 1012.[4] The court noted, however, that "DOL bears the authority for setting the *content* of the labor certification and that [INS] cannot impose job qualifications beyond those contemplated therein." *Id.* at 1015 (emphasis in original).

## THE PROCEEDINGS BELOW

Plaintiffs' second argument suggests that the INS misconstrued the content of the labor certification by requiring a showing of two years of college with a "major" in languages or business as one of the qualifications for sixth preference classification. In the alternative, plaintiff argues that the INS decision that plaintiff did not possess these qualifications is not supported by substantial evidence on the record as a whole.

■ It is well settled that the findings of the INS with respect to Ms. Horvath's qualifications "must be sustained if based on substantial evidence and not an abuse of discretion." *Wing Ding Chan v. INS,* 631 F.2d 978, 980–81 (D.C.Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1371 (1981). Before examining the evidence, the Court must first determine precisely what minimum educational credentials are required by the certified job offer. While plaintiffs are correct in asserting that liaison with non-English speaking clients is the essence of the job offer, it is also apparent that the job offer clearly requires two years of col-

---

**3.** The Attorney General has delegated all power relating to immigration and naturalization to the INS. 8 C.F.R. § 2.1.

**4.** Plaintiff relied heavily on *Singh v. Attorney General,* 510 F.Supp. 351 (D.D.C.1980), *aff'd on other grounds,* 672 F.2d 894 (D.C.Cir.1981)

(Mem.). The *Madany* court explicitly held, however, that "[w]e ... do not follow the ruling in *Singh* to the extent that it suggests that INS does not have primary authority for preference classification decisions." 696 F.2d at 1013.

lege with training and a "major field of study" in languages or business. Whether or not such college education is relevant or appropriate to the job in question is not an issue before this Court. The Court—like the INS—must examine the certified job offer exactly as it is completed by the prospective employer. In this case, two years of college and a "major field of study" in languages or business are the minimum educational requirements for a "qualified" employee.

■ It is undisputed that plaintiff Horvath has at least two years of college training.[5] As noted by the Regional Commissioner, the certified copy of Ms. Horvath's transcript dated June 20, 1967 states that Ms. Horvath has "completed the two years of our Secretarial course." From this designation of Ms. Horvath's degree, the Commissioner concludes that the beneficiary's major field of study was in a "secretarial" course—not "business" or "language." *In Re Petition of Rosedale and Linden Park Company*, Decision of Regional Commissioner, Immigration and Naturalization Service, Jan. 25, 1983.

It is not immediately apparent to the Court why the designation "secretarial" is automatically deemed to be unrelated to the study of "business." In light of the parties' agreement that *no* college *degree* is required, it would seem that the INS decision to automatically treat "secretarial" coursework as "non-business" and "non-language" is manifestly unreasonable if not entirely arbitrary.[6]

In addition, the Court's review of the transcript contained in the administrative record reveals that plaintiff Horvath enrolled in and passed a total of 36 courses in the two year period. If one includes the secretarial coursework within the business category, 23 out of 36 of the courses may be classified as either "business" or "language" courses. Sixteen courses are in "languages," ranging from "Business Spanish" and "Spanish Grammar" to "Commercial English" and "Translation." Seven of the courses are purely "business" oriented including courses in typing, shorthand and economics. The remainder might be classified as "liberal arts" courses.

Given the fact that virtually two-thirds of the courses taken during plaintiff's two years of college relate to business or language topics, the Court holds that the INS conclusion that plaintiff Horvath lacks a "major field of study" in languages or business is not supported by substantial evidence on the record as a whole.[7] *See Ma-*

---

**5.** In addition to the two years attendance at Crandon College in Montevideo, Uruguay, there is evidence in the record of additional diplomas or certificates including a "Certificate of Proficiency in English from the University of Michigan English Language Institute," and a "Certificate of Successful Completion of the Language Proficiency Test in French Administered by the Organization of American States." However, there is nothing in the record to indicate whether these "diplomas" represent completion of formal type of training which the Court equates with "college." It may well be that these additional documents significantly enhance plaintiff's academic background. However, absent additional information in the record, it is impossible to determine what weight to give them. Thus, the failure of the INS to consider this evidence was not erroneous under the circumstances.

**6.** This is especially so in light of the record as a whole. The job description on Form MA7–50B describes Ms. Horvath's potential tasks as "selling" graves and crypts to non-English speaking clients, "direct[ing] promotional campaigns" to-

wards non-English speaking clients and "translat[ing] deeds and corresponding literature." This job description, like the rest of the record, provides no support for the INS' narrow reading of the term "business" to include only those courses commonly studied by an American M.B.A. candidate or student in a four-year business degree program. Moreover, the INS apparently failed to consider whether plaintiff had a "major field of study" in the alternative field of "languages."

**7.** It is possible to read the employment certification form as requiring the applicant to have "majored" in business or language in the sense of having received a B.A. degree with the specified major in these disciplines. Persons who graduate from American colleges and universities may select certain "major" and "minor" courses of study which signify the completion of a specified amount of coursework on a given subject matter. It should be noted that Form MA7–50B requests the information on "Major Field of Study" immediately following the instruction to "Specify College Degree Required."

*dany v. Smith,* 696 F.2d 1008, 1013 (D.C. Cir.1983).

In so holding, the Court recognizes that the INS has an expertise in the area of immigration and naturalization that the Court does not share. The present case, however, does not deal with any technicalities of the law; rather, it involves reading and applying the plain language of the form MA7–50B application. Where the INS—or any other agency—produces a result that is arbitrary and not based on substantial evidence in the record, it is the duty of the courts to reverse that decision. Deference to the agency must not yield to the temptation to rubberstamp all decisions.

In *Denver Tofu Co. v. INS,* 525 F.Supp. 254 (D.Col.1981), for example, the court chided the INS for taking a "mechanical" approach to considering an alien's qualification. *Id.* at 259. The court ultimately reversed the INS, holding that it was arbitrary and capricious to focus on a technical requirement of "management training" when the job involved the supervision of only three employees. *Id.* Similarly, in *Guinto v. INS,* 303 F.Supp. 1094 (C.D.Cal. 1969), a finding by the INS that a teacher without a baccalaureate degree was not a "member of the professions" was held to be an abuse of discretion. The teacher in question, who was seeking a third preference visa, had received his education overseas and had almost eighteen years teaching experience. *Id.* at 1095. Nevertheless, the INS found that the teacher lacked the necessary educational requirements. *Id.* at 1096. In *Guinto,* as in the present case, the court held the INS interpretation to be "clearly erroneous, arbitrary, ... [and] unreasonable." *Id.* at 1097. The case was remanded for appropriate action. *Id.* at 1102. Thus, while the standard of review remains limited, the district courts, in appropriate circumstances, will reverse INS action that does not meet this standard.

This would normally support the more formal reading of the term "major." However, in this particular case, no college degree is required—only two years of college level training. Requir-

The defendant has indicated that the alleged lack of educational qualifications is the only "deficiency" preventing approval of plaintiffs' petition. In light of the Court's disposition of this issue above, it appears that this deficiency has been cured. Accordingly, it is this 5th day of October, 1984 hereby

ORDERED that this case be, and hereby is, remanded to the Regional Commissioner, Eastern Regional Office of the Immigration and Naturalization Service, and that the Commissioner shall, in accordance with this opinion, take such steps as may be necessary to approve the petition for a sixth preference immigrant visa brought by the plaintiff Rosedale and Linden Park Company on behalf of plaintiff Maria Judith Horvath.

ing an applicant who has not completed college to prove that he has "majored" in a given field would be an unreasonable reading of the employment qualifications.