**Harjinder Kaur SINGH and Amar J. Macker, Plaintiffs,**

v.

**ATTORNEY GENERAL, Defendant.**

**Civ. A. No. 80–1082.**

United States District Court, District of Columbia.

Dec. 24, 1980.

Charles Gordon, Washington, D. C., for plaintiffs.

Eric A. Fisher, General Litigation & Legal Advice Section, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

HAROLD H. GREENE, District *Judge.*

This action involves the denial of a petition for permanent residency status under a sixth preference immigration classification. Such a classification is established by section 203(a)(6) of the Immigration and Nationality Act, as amended,[1] which provides that visas shall be made available "to qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." Although the Secretary of Labor found Ms. Singh qualified, the Attorney General, acting through the Immigration and Naturalization Service,[2] denied the petition, and this action followed.

### I

Plaintiff Singh is a citizen of India who entered the United States as an employee of a diplomatic official under A–2 nonimmigrant alien status.[3] Subsequently, she sought adjustment to permanent residency status under section 203(a)(6) on the basis of a petition filed on her behalf by plaintiff Macker, for whom Singh is currently employed as a live-in domestic worker. The petition included a labor certification issued by the Department of Labor, as required by the regulations. In spite of this certification, INS, after conducting its own investigation, determined that Singh had not established that she possessed the minimum qualification required for the position and that, accordingly, she was not entitled to a sixth preference classification.

Specifically, it appeared that Macker had listed on the appropriate Labor Department's Job Offer for Alien Employment form that the domestic worker he intended to employ required one-year's prior experience. On the Statement of Qualifications of Alien form, also filed with the Labor

---

1. 8 U.S.C. § 1153(a)(6).

2. Both the Attorney General and the Immigration and Naturalization Service will hereafter be generally referred to as the INS.

3. See 8 U.S.C. § 1101(a)(15)(A)(ii).

Department, Singh listed two episodes of relevant work experience: nine months as a maid in the Indian Embassy in Washington and twenty-nine months as a domestic worker in a private home in India. The Labor Department certification of the forms for submission to INS represented a finding that under the terms of the job offer, workers were not available in the United States for the position, and that the hiring of an alien would therefore not have an adverse effect on domestic wages. The certified forms were submitted to INS by plaintiff with a petition for preference status classification. INS investigated Singh's prior experience through the American Embassy in New Delhi, and it determined that Singh had not adequately established her employment in India and hence had not demonstrated that she possessed the one-year work experience. Although plaintiff submitted further affidavits to document her work in India and offered explanations for the information obtained by the American Embassy, INS upheld its earlier determination and denied the petition. After exhausting their administrative appeals, the two plaintiffs filed this action.

## II

The central legal issue presented for resolution concerns the division of authority between the Department of Labor and the Attorney General, acting through the INS, with respect to sixth preference immigration petitions. Plaintiffs assert that, the decision on the issuance of a labor certification having been committed to the jurisdiction of the Labor Department, INS had no independent authority to deny a petition once Labor had granted a certification. The INS argues, in effect, that a certification by the Secretary of Labor is merely a necessary prerequisite to a sixth preference visa petition but is not sufficient by itself. In INS' view, it has the authority independently to determine whether an applicant has met the qualification requirements set

**4.** 8 U.S.C. § 1182(a)(14).

**5.** The court agreed that, under 8 U.S.C. § 1182(a)(19), INS could refuse to grant a visa

forth in the application, and that it also possesses the concomitant authority to deny a visa petition based upon its own negative determination.

Both sides rely heavily upon a fairly recent decision of the Court of Appeals for this Circuit—*Castaneda-Gonzalez v. Immigration and Naturalization Service*, 564 F.2d 417 (D.C.Cir.1977). In that case, the court was called upon to construe section 212(a)(14) of the Immigration and Nationality Act[4] which excludes from admission into the United States,

Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to [sixth] preference immigrant aliens....

Relying upon the statutory language as well as the legislative history, the court concluded that, under this statutory provision, INS could not exclude an alien who had received a certification from the Department of Labor simply because, in the opinion of INS, the certification was based on an inaccurate factual basis.[5] The certification, said the court, is binding upon the Attorney General and the INS, and "an alien who has a labor certificate which has not been invalidated by the Secretary of Labor may not be deported as an alien excludable under subsection 212(a)(14)." 564 F.2d at 424 n. 14.

to an alien who willfully misrepresented any material facts in his visa petition. 564 F.2d at 425.

On the basis of that decision and that language plaintiff argues that INS has here overstepped its legitimate authority, and, indeed, a decision of the District Court for the District of Massachusetts lends substantial support for that contention. In *Stewart Infra-Red Commissary v. Coomey*, 485 F.Supp. 345 (D.Mass.1980), the Court held, on the authority of *Castaneda*, that INS is without authority to deny a sixth preference visa petition on the ground that the alien did not possess the qualifications for the position when the qualifications have been certified by the Labor Department. This Court, however, is unable to agree with the reasoning in *Stewart Infra-Red*, and it views the situation as somewhat more complex than might appear from the surface of plaintiff's set of arguments and the *Castaneda* result.

The alien in *Castaneda* was not governed by sections 203 and 204 of the Act,[6] because at the time of his entry immigrants from countries in the western hemisphere were not subject to the preference system. See *Castaneda, supra,* 564 F.2d at 428 n. 26. However, the application of the instant plaintiff, who is an immigrant from Asia,[7] is governed by sections 203 and 204 as well as by subsection 212(a)(14). Section 204(b) of the Act[8] provides:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 203(a) ... (6), the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made ... is eligible for a preference status under section 203(a), approve the petition....

On its face, this section, unlike section 212(a)(14), does not vest plenary authority in the Secretary of Labor, but provides that "the Attorney General shall [depending upon certain conditions] approve the petition." Indeed, the Court of Appeals in *Castaneda* made a pointed distinction between the two sections, as follows (564 F.2d at 429):

> A comparison of the statutory provisions governing preference status decisions and subsection 212(a)(14) supports our holding that the Attorney General does not have legislatively delegated authority to review the basis for the Secretary of Labor's certification decision. With respect to petitions for preference status which require assessment of either an alien's qualifications for an occupation or the state of the labor supply in the United States, section 204(b) directs the Attorney General to '[consult] with the Secretary of Labor' but nonetheless clearly provides that the Attorney General, himself, shall determine whether an alien is eligible for a preference under section 203(a). *Id.,* 8 U.S.C. § 1154(b) (1970). This is further evidence of congressional sensitivity to the interplay of administrative authority which permeates the immigration laws, and demonstrates that, where Congress sought to involve the Department of Labor simply as an enforcement aid to the Attorney General in areas of its expertise, the legislators did not rely on any implied power of the Attorney General but provided an unambiguous expression of their intent. Subsection 212(a)(14) does not refer to 'consultation' with or 'initial screening' by the Secretary of Labor with respect to substantive issues which it or any other section of the Act directs the Attorney General to decide. It simply states that immigrant aliens seeking entry to perform labor are to be excluded 'unless the Secretary of Labor has determined and certified ....' 8 U.S.C. § 1182(a)(14) (1970).

Defendant relies upon this language in *Castaneda* as compelling a decision in its favor. However, again, further inquiry be-

---

**6.** 8 U.S.C. §§ 1153 and 1154 respectively.

**7.** In 1976, the immigration laws were amended, and the distinction between western and eastern hemisphere immigrants was abolished. All immigrants are now governed by sections 203 and 204, as well as 212(a)(14). See *Castaneda, supra,* 564 F.2d at 428 n. 26.

**8.** 8 U.S.C. § 1154(b).

yond the bare bones of the court's language is required.

## III

▇ It is clear from a reading of the congressional committee reports and the floor debate on section 204(b) that Congress intended the Labor Department to exercise primary authority over the certification of applications for sixth preference classification.

The effect of immigration provisions on domestic employment was intensely debated when Congress passed amendments to the Immigration and Nationality Act in 1965. Sponsors of the legislation repeatedly named the Labor Department's certification procedure as the mechanism for the protection of domestic employment conditions.[9] Furthermore, the Senate Committee Report, S.Rep.No. 89–748, 89th Cong., 1st Sess., stated at 15, U.S.Code Cong. & Admin.News 1965, at 3328, 3334:

> The primary responsibility is placed upon the intending immigrant to obtain the Secretary of Labor's clearance prior to the issuance of a visa.... The certification must be obtained in individual cases before a visa may be issued to the intending immigrant.
>
> The Department of Labor should have no difficulty in adapting to this new procedure inasmuch as the Department ... presently determines availability of domestic workers and the standards of working conditions.[10]

The House Committee Report, H.R.Rep.No. 89–745, 89th Cong., 1st Sess., at 14, 21 explains the operation of section 212(a)(14) as applied to sixth preference applications in terms similar to those of the Senate Committee. In its explanation of section 204, the House Committee did not even discuss sixth preference classifications except to mention (at p. 21) the requirement that the Attorney General report to Congress the basis for each such petition granted. Thus, the committee reports contain no suggestion that the amendments were intended to transfer basic authority from the Labor Department to the Attorney General.[11]

Comments on the floor of both houses of Congress buttress this conclusion. For example, Senator Hart, a leading member of the Subcommittee on Immigration of the Senate Committee on the Judiciary, stated during the floor debates (111 Cong.Rec. 24239 (1965))

> It is my understanding that when an immigrant seeks admission under these categories as special immigrants or preference immigrants and a determination by the Secretary of Labor is required, the Secretary will make a certification in the case of the individual immigrant. He must ascertain the prospective immigrant's skill and will match those skills with the employment and manpower reports.... On the basis of such an analysis the Secretary will be in a position to meet the requirement of the law, and provide the type of employment safeguards sought in the legislation.

Chairman Celler of the House Judiciary Committee, the floor manager of the bill, likewise noted (111 Cong.Rec. 21758 (1965)):

> The bill provides for regulatory discretion which resides with the Secretary of Labor in imposing conditions to keep out immigrants who would take the work away from Americans or depress wages and working conditions.

And Representative Gilbert, a member of the House Subcommittee on Immigration stated (111 Cong.Rec. 21770 (1965)):

> The Secretary of Labor is held responsible for the certifying of labor shortages

---

9. See, e. g., 111 Cong.Rec. 21586, 21758 (1965) (Rep. Celler).

10. Although the intent is not precisely clear, the phrase "standards of working conditions" is most likely a reference to the matching of individuals' qualifications and job requirements, especially when interpreted in light of the emphasis on individual determinations.

11. The only change in procedure that may be said to have been clearly intended was that the burden of demonstrating the existence of no adverse impact on domestic employment was placed on the applicant, and the Labor Department was at the same time relieved of the burden of showing the opposite. See, e. g., 111 Cong.Rec. 21767, 21779 (1965).

which this provision is meant to remedy. . . . [I]f there appears a shortage of labor which Americans cannot fill and of which there is an abundance abroad, the Secretary can take action to satisfy the need.[12]

The conclusion that the Secretary of Labor is to deal with the question of immigrant skills in relation to the American labor market is the only sensible one from an administrative viewpoint. As noted, under the 1965 amendments to the Immigration and Nationality Act, immigrants from the western hemisphere, unlike those from eastern hemisphere countries, were not subject to preference classification and hence were governed by section 212(a)(14) without reference to section 204(b).[13] However, whatever may be the effect of that difference in other respects, Congress made no distinction in regard to the impact of these two sets of immigrants on the American labor market: both were to be admitted only if there would be no impact on that market. Without specific indicia of a congressional intent to that effect, it would make no sense to construe the statute to provide that job qualifications of immigrants from the western hemisphere are to be reviewed solely by the Labor Department, while those of immigrants from the eastern hemisphere are to be subject also to the determination of the Attorney General. Such an awkward, indeed irrational, scheme would be attributed to Congress only on the basis of far clearer congressional purpose than is apparent here. As the Court of Appeals for the First Circuit observed in following *Castaneda* in a section 212(a)(14) case, "[a]n immigrant's qualifications for a job may well be the exclusive concern of the Secretary of Labor." *Spyropoulos v. Immigration and Naturalization Service*, 590 F.2d 1, 3 (1st Cir. 1978).

On the basis of the legislative record, it appears that Congress intended the Secretary of Labor, not the Attorney General, to exercise routine discretion in the determination of sixth preference classification applications.

## IV

■ The two statutory provisions and the apparent legislative intent are best reconciled by a construction which vests primary authority over labor qualifications in the Secretary of Labor, with the Attorney General retaining the authority to overrule the Secretary, after consultation with him, for any possible abuse of discretion. The statute itself, 8 U.S.C. § 1154(b) so indicates:

After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a [preference] status . . . , the Attorney General shall, if he determines that the facts stated in the petition are untrue and that the alien in behalf of whom the petition is made . . . is eligible for a preference status . . . , approve the petition. . . .

The *Castaneda* court, although it was dealing specifically with a different statutory provision, evidences a similar approach to problems of administration. The court there observed that the Attorney General retains the responsibility to determine whether the issuance of labor certification by the Secretary of Labor constitutes an abuse of that discretion, stating (564 F.2d at 432–33):

If the [Immigration and Naturalization] Service proves that a labor certification was based on the misrepresentation of a fact, which if correctly stated would conclusively demonstrate an adverse impact on wages or working conditions or the availability of American workers, we would find that the Secretary of Labor 'could not have granted' a certificate under the correct facts and hold that any

---

12. More specific elucidation of the intended roles of the Labor Department and the Attorney General regarding sixth preference classifications is absent from the floor debate. All of the comments refer to the safeguard provided to domestic labor by the requirement that the Secretary of Labor certify requests for alien employment before the issuance of visas. See, e. g., 111 Cong.Rec. 21586, 21767, 21771, 21785, 21791, 21793, 21815, 24227, 24442, 24500, 24546–47, 24564, 24763 (1965).

13. See note 7 *supra*.

certificate based on that misrepresentation [was] invalid under the Secretary's regulation.

In the instant case, INS determined that the plaintiff-applicant, Singh, did not qualify for the job offered by the plaintiff-employer, Macker, because she had not adequately documented her satisfaction of the one-year minimum prior work experience required for the job by Macker.[14] It is not contested that Singh had nine months of relevant work experience. The record reveals no attempt by INS to consult with the Department of Labor to determine whether domestic workers with nine months of experience were willing and available to take Macker's job and, thus, whether Singh would be taking a job away from an American worker. Similarly, INS appears to have made no determination on its own that issuance of a visa to Singh would hurt domestic employment opportunities.

The record reveals simply a purely mechanical approach by the Immigration and Naturalization Service: the job description requires one year; the applicant has proven only nine months; petition denied. Indeed, in almost Kafkaesque fashion, the government first concedes that Singh is clearly qualified for the job today (having been working as a domestic in the Macker household throughout the period of administrative proceedings and litigation), and then suggests that "nothing prevents [her] from filing the necessary applications," provided she first returns to India.[15] If Singh and Macker were to dismiss this suit and file a new application, final action could be several more years away. In the absence of any indication that Macker's employment of Singh adversely affects anyone else's job opportunities, it is difficult to understand why Singh should be relegated to India and Macker prevented from employing her during the interim.

This insensitivity to the careful balancing of interests of potential immigrants, potential employers, and American workers envisioned by the immigration laws may be said to confirm the wisdom of the legislative decision to commit determinations of this kind to the Department of Labor. In any event, that is where the Congress decided jurisdiction should be.

V

Even if it be assumed that the Attorney General has the authority unilaterally to override the certification of the Secretary of Labor, the Court would have to reverse the Attorney General's denial of the visa petition.

■ If the Attorney General and the Immigration and Naturalization Service do have discretion after a labor certification is issued to weigh evidence to determine whether "the facts stated in the petition are true," and to determine whether "the alien . . . is eligible for a preference status," the Department of Justice must itself exercise this authority rather than to delegate its exercise to someone else. Yet that is precisely what occurred here.

■ The denial of sixth preference status was based on the INS conclusion that Singh had not satisfactorily established her employment as a domestic in India. This determination resulted from an investigation by an employee of the American Embassy in New Delhi who could not obtain corroboration of Singh's claimed experience. After receiving a copy of the adverse report, Singh provided new affidavits from her alleged employer in India and from the individuals apparently interviewed by the Embassy investigator in India, corroborating her employment claim and explaining the possible source of inconsistent and contradictory evidence from the investigation. As

---

**14.** This approach is particularly puzzling since the one-year provision was written in by plaintiff's employer himself, not the government. If Macker had stipulated nine months as the minimum experience requirement for the job, in all likelihood he would have received certification from the Labor Department on that basis. Singh would then have passed the scrutiny of

INS, and the adjustment of status would have been granted without incident years ago.

**15.** Memorandum of Law in Support of Defendant's Motion for Summary Judgment, p. 9. INS' order that Singh leave the country was stayed pending the disposition of the instant action.

a result of this additional documentation, INS requested the American Embassy in New Delhi to conduct another investigation into the claimed work experience. The American Embassy, however, declined to do so, citing the conflicting evidence and concluding,

> Embassy is convinced that subject's adjustment of status is based on an accommodation work experience certificate given by a family friend. In view of above we feel that interviewing interested parties again would not be likely to be productive, . . . . [16]

In spite of its earlier determination that further investigation was necessary to reconcile the conflicting evidence, INS thereupon proceeded to deny the petition, citing the adverse information contained in the earlier Embassy report.[17] In short, by instructing the Embassy to investigate Singh's explanations but by then accepting the Embassy's determination that no further investigation was warranted, INS in effect delegated its discretion to the American Embassy in New Delhi. This *de facto* delegation of discretion to the American Embassy was clearly an improper abuse of discretion. Having made the determination initially that further investigation was necessary in order to confirm or to refute Singh's affidavits, INS could not legally defer to the conclusory opinions of an officer in the Embassy that various affidavits were perjurious.

### VI

For the reasons stated, Court finds that the denial of plaintiffs' sixth preference classification petition by defendant was improper and must be vacated. Under some circumstances, given the holding of this Opinion, the Court might have ordered the case remanded to INS for a determination of whether Singh qualifies for a sixth preference status. If the Court is correct, however, in its view that the Attorney General has no general authority independently to override the Secretary of Labor's issuance of a labor certificate, an open remand would obviously be improper. Moreover, even if that conclusion were incorrect, such a remand would not be appropriate. The American Embassy in India has already determined that it cannot or will not seek further evidence. Thus, the sworn statements submitted on behalf of plaintiff and the certification of the Department of Labor stand unrebutted and, in all likelihood, unrebuttable. In view of Singh's obvious and admitted eligibility for admission now, nothing would be gained by keeping Singh's immigration status further in doubt. Therefore, the Court in a separate Order of this date remands the petition to the Immigration and Naturalization Service with instructions that the visa petition shall be approved.

---

**16.** Certified Administrative Record Deportation Proceedings, Harjinder Kaur Singh, Immigration and Naturalization Service File No. A21 706 714, at 33.

**17.** No reference was made to the affidavits provided by Singh explaining claimed inaccuracies in the Embassy report. INS simply repeated the unsubstantiated conclusions contained in the Embassy's refusal to investigate further:

> The letter of recommendation was evidently signed as an accommodation to help the beneficiary immigrate to the United States. In accordance with the investigative report and the derogatory information, it is the intention of this Service to deny your petition." Certified Administrative Record at 31.