DENVER TOFU COMPANY and Junji Shimada, Plaintiffs,

v.

DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE, DENVER DISTRICT, Defendant.

Civ. A. No. 81–K–407.

United States District Court, D. Colorado.

Oct. 9, 1981.

George S. Carter, Denver, Colo., for plaintiffs.

James W. Winchester, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiffs seek a declaratory judgment stating that defendant's denial of a preference visa petition to plaintiff Shimada violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). All parties have moved for summary judgment. Briefs, affidavits, forms and the administrative record have been submitted. The motions are ripe for determination. This court has jurisdiction under 8 U.S.C. § 1329.

In April, 1977 plaintiff Denver Tofu submitted a Department of Labor (DOL) form MA 7–50B, "Job Offer for Alien Employment," to the DOL. The offer was for a product development manager, who would direct and train workers in the research, development and processing of soybean and yam food products. The offer also stated that two years prior on-the-job training and two years experience were required. In August, 1977 the DOL certified, pursuant to 8 U.S.C. § 1182(a)(14), that there were not sufficient U.S. workers available for such a job and that employment of an alien would not adversely affect the wages and working conditions of U.S. workers.

On April 10, 1979 plaintiff Shimada's attorney filed an Immigration and Naturalization Service (INS) form I–140, "Petition to Classify Preference Status of Alien on Basis of Profession or Occupation." In this petition, plaintiff Shimada sought to be classified as an immigrant entitled to preference status under section 203(a)(6) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(6). The INS district director denied this petition on October 12, 1979, stating that petitioner had only five months of the two years on-the-job training that the job offer required. The INS regional commissioner dismissed Shimada's appeal on December 8, 1980. Plaintiffs then filed this action and moved for summary judgment, challenging the INS's authority to review Shimada's qualifications and asserting alternatively that the INS abused its discretion in denying Shimada's petition. I now partially grant plaintiffs summary judgment on the basis of their second argument.

Defendant's cross motion for summary judgment was accompanied by an affidavit describing some of the DOL procedures regarding immigrants. Plaintiffs moved to strike this affidavit. In opposing this motion to strike, defendant submitted two more affidavits, describing some of the INS procedures. After a hearing, I granted plaintiffs' motion to strike the first affidavit. Plaintiffs then moved to strike the two

later affidavits. I granted this motion by minute order. Defendant then objected to this order. I now find defendant's objection to be without merit. On their cross motions for summary judgment, all parties agree that the sole issues are whether INS exceeded its statutory authority in reviewing Shimada's qualifications and whether the IRS finding that Shimada was not qualified was an abuse of discretion. Because plaintiffs have not asserted that defendant invidiously discriminated against Shimada, the usual DOL and INS practices, which are the sole subject of the affidavits, are simply not relevant.

## I. STATUTORY FRAMEWORK

Because the present motions involve several sections of the Immigration and Nationality Act, I will first describe the relevant sections.

Under section 212(a)(14), 8 U.S.C. § 1182(a)(14), the following class of aliens "shall be ineligible to receive visas and shall be excluded from admission into the United States:"

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified [that there are not sufficient qualified U.S. workers and that] the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply . . . to preference immigrant aliens described in [8 U.S.C. § 1153(a)(6). . . .[1]

Under section 203(a)(6), 8 U.S.C. § 1153(a)(6), aliens are entitled to preference in receiving immigrant visas if they are

qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States.

Section 204(b), 8 U.S.C. § 1154(b) provides:

After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under . . . [8 U.S.C. § 1153(a)(6)], the Attorney General[2] shall, if he determines that the facts stated in the petition are true, and that the alien in behalf of whom the petition is made . . . is eligible for a preference status under [8 U.S.C. § 1153], approve the petition. . . .

## II. INS AUTHORITY TO REVIEW AN APPLICANT'S QUALIFICATIONS

■ Plaintiffs argue that the INS is without authority to determine if an alien is qualified for preference status under section 203(a)(6). They argue that congress intended that the DOL determine whether an alien qualifies for a preference petition and that the INS can refuse to grant the petition only if the alien applicant made fraudulent statements on his application.[3] Defendant, on the other hand, asserts that the Immigration and Nationality Act envisions that the DOL will determine whether there is a shortage of the particular type of employee that is sought in an offer of alien employment, but that the INS may then determine if a particular alien has the qualifications listed in the job offer. Although the statutory framework is not completely clear, I conclude that the INS has the authority to determine whether a particular alien qualifies for an offered job.

In *Castenada-Gonzalez v. INS*, 564 F.2d 417 (D.C.Cir.1977), the court held that the

---

1. In addition to being excludable and ineligible for preference immigration, such aliens are also deportable under section 241, 8 U.S.C. § 1251(a)(1).

2. The statute vests the authority in the U.S. Attorney General, who has in turn delegated it to the INS. See 8 C.F.R. § 2.1 (1981).

3. Parties agree that the INS has this authority under section 212(a)(19), 8 U.S.C. § 1182(a)(19).

INS could not *deport* an alien who had been certified by the DOL unless the alien had made a willful, material misrepresentation in his application for labor certification. *Id.* at 423. The court also noted, however, that the Attorney General (and thus the INS, see note 2 *supra*) had much greater discretion in cases involving preference immigration status than in deportation cases:

> With respect to petitions for preference status which require assessment of either an alien's qualifications for an occupation or the state of the labor supply in the United States, section 204(b) directs the Attorney General to '[consult] with the Secretary of Labor' but nonetheless clearly provides that the Attorney General, himself, shall determine whether an alien is eligible for a preference under section 203(a). *Id.*, 8 U.S.C. § 1154(b).

*Id.* at 429.[4]

Contrary to plaintiffs' assertion, the DOL regulation, 20 C.F.R. § 656.30(d) does not lead to a contrary result. That regulation provides that a labor certification is subject to invalidation if the INS determines that there was fraud or a willful misrepresentation in the labor certificate application. The regulation does not state what effect a valid labor certification shall have.

Plaintiffs also cite *Singh v. Attorney General*, 510 F.Supp. 351 (D.D.C.1980) and *Stewart Infra-Red Commissary of Massachusetts v. Commey*, 485 F.Supp. 345 (D.Mass.1980). Both of these cases held that the INS is without authority to review a DOL certification when ruling on an alien's preference visa application. I decline to follow these cases. In *Stewart* the court did not distinguish at all between deportation and immigration, even though the statutes vest the INS with markedly different discretions in these two areas. In *Singh* the court recognized that the INS had different discretion in preference immigration cases than in other cases. 510 F.Supp. at 354–55. The court then reviewed the legislative history of the Immi-

gration and Nationality Act and concluded that congress intended that the DOL, and not the INS, have the discretion to review preference visa petitions. *Id.* at 355–56. I decline to follow this reasoning because the language of section 204(b), 8 U.S.C. § 1154(b), explicitly directs the INS to determine, after investigating the facts of each case, whether the applicant is eligible for preference status before approving the petition. In this case the INS had the authority to review Shimada's application to determine whether he met the job offer's requirements.

### III. THE INS FINDINGS

■ Plaintiffs' alternate argument is that the INS decision that Shimada did not qualify for Denver Tofu's job offer is not supported by the evidence. Denver Tofu's job description states:

30. Describe fully the job to be performed:

Will direct workers in research & development of soybean, yam and other related food products. Will be responsible for training new workers in the processing of soybeans & yam flour into food products and for managing the entire plant in owner's absence.

31. State in detail the *minimum* requirements for worker to perform satisfactorily the job duties described above.

. . . . .

Training: 2 years; type of training; on-the-job training. Experience [in job being offered]: 2 years.

Shimada's statement of qualifications states that he has the full-time equivalent of over six years experience "learning & participating in the production of yam noodles, yam cakes, soybean cakes, and all variations thereof. In addition, Shimada has five months' experience as an "executive trainee" with Denver Tofu.

Based on this information the INS district director concluded that Shimada had

---

4. Plaintiffs also cite *Spyropoulos v. INS*, 590 F.2d 1, 3 (1st Cir. 1978). That case also involved deportation and did not discuss immi-

gration preference at all. It therefore is inapposite here.

the necessary experience, but not the required training:

> However, only five months of the required two years of training has been established. Since the job offer, Form MA7–50B, requires training to be listed separately from experience, the necessity of having a training program is implied. The type of training required in this case is for a product development manager, incorporating all of the functions listed in the job description. It must be concluded from the evidence submitted, that the beneficiary has not completed two years of a viable training program designed to produce a product development manager.

On appeal to the INS regional commissioner, plaintiffs submitted several exhibits. In particular, there was a letter from the owner of Denver Tofu to the INS stating that the two years training envisioned on-the-job training in the art of making tofu, etc., rather than managerial training. There was also a letter from plaintiffs' attorney to the Colorado Division of Employment stating that the two years experience was to be in food processing, and that the applicant "must be able to use this knowledge to develop new products and train new workers...."[5] Along with these exhibits, plaintiffs' counsel argued that the INS district director misunderstood the two-year training requirement. After reviewing the case, the INS regional commissioner concluded:

> In this case, the position offered has a qualification requirement of two years training, which may be satisfied by on-the-job training, and two years experience in the job being offered. I conclude that these training and experience requirements relate to training which could reasonably be calculated to prepare a person for the occupation which the job opening refers to and experience *specifically as* a product development manager. The authority for this interpretation comes from the printed form MA7–50B itself (this form specifies that the train-

ing and other requirements are 'for the worker to perform satisfactorily the job duties described . . . .;' and that the experience requirements refers to 'number of years or months in job being offered'). The District Director has not misunderstood what the petitioner *intended* the training to mean when he set out his requirement of two years of it. The District Director must examine the nature of the training in terms of the job offered to determine what is appropriate training. He has done this.

By this standard, neither the experience nor the training which the petitioner has shown that the beneficiary possesses fits the qualifications required. The record indicates that the beneficiary has more than six years' experience, which includes on-the-job training in making soybean and yam products as a production worker in a Tofu factory in Japan. Additionally, he has more than seven years' experience as an ingredients salesman which may also have involved on-the-job training in the sales field. He participated in a five-month 'executive trainee' program. No other managerial training or experience is alleged. I have carefully evaluated all of the beneficiary's experience and considered its training aspects in light of the duties of the position offered here. I conclude that training in product knowledge, and by inference, in the skill of development of new products, could well result from experience in actually making the product and selling its ingredients. However, the managerial and supervisory skills which are evidently required from a reading of the job duties are not necessarily learned through such experience and the petitioner has submitted no evidence that the beneficiary has had any on-the-job managerial/supervisory training other than five months as an 'executive trainee.' The District Director, following this same line of reasoning, concluded that these five months are not equivalent to the two years' training specified. I agree. (I do not agree that

---

**5.** This letter, dated April 13, 1977, was apparently sent when Denver Tofu was seeking local applicants for the job for which it now seeks to hire Shimada.

the petitioner is required to show a 'viable training program' of two years' duration, however. Experience which showed that on-the-job training in managerial and supervisory skills was an aspect would have been sufficient as training). Further, an important point not mentioned by the District Director, is that the beneficiary does not possess two years' *experience* in the job being offered, notwithstanding that he has many years' experience in two related occupations. This factor alone would preclude the approval of this petition. (Emphasis in original.)

Under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A):

The reviewing court shall—

hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

In this case I find that the INS action is arbitrary, capricious and an abuse of discretion. The INS regional commissioner's opinion states that the job position at issue here involves directing three workers. It is arbitrary and capricious for the INS to focus so strongly on Shimada's lack of managerial training when so few workers are involved. From the record it is clear that Shimada is amply qualified for the position described.

■ I conclude that the INS should have found that Shimada was qualified for the job at Denver Tofu. However, the INS was justifiably concerned that because the job offer did not accurately delineate the job's requirements some qualified domestic worker may have been deterred or not hired because of the job offer's inaccuracies.

There is no indication that the INS sought to consult with the DOL to determine whether there were any domestic workers with qualifications comparable to Shimada's who were available for the position but were denied the job because of their failure to meet all of the literal requirements. There is also no indication that the INS consulted with the DOL to determine if Denver Tofu's employment of Shimada would adversely affect the domestic labor market.

Rather than taking a mechanical approach,[6] the INS should have concluded that Shimada qualified for the job. Then, to protect the domestic labor market, the INS should have followed the directions of section 204(b), 8 U.S.C. § 1154(b), and consulted with the DOL to determine if there was in fact a shortage of workers with Shimada's qualifications. This procedure would have allowed a qualified alien to be hired, but only if doing so would not have a detrimental effect on the U.S. labor force, just as section 203(a)(6), 8 U.S.C. § 1153(a)(6), envisions. It is

ORDERED that defendant's objection to plaintiff's motion to strike and court's order granting motion is overruled. It is further

ORDERED that a declaratory judgment shall be entered, declaring that plaintiff Shimada is qualified for employment under the Job Offer for Alien Employment filed by plaintiff Denver Tofu with the Department of Labor on April 19, 1977. It is further

ORDERED that the Immigration and Naturalization Service shall grant plaintiff Shimada the preference immigration classification for which he applied on April 10, 1979 within six months of the date of this order unless the Department of Labor certifies either that there are sufficient U.S. workers available or that Shimada's employment would adversely affect the wages and working conditions of similarly situated U.S. workers. It is further

ORDERED that, upon entry of judgment, this civil action shall be closed. Each party to bear his or its own costs.

---

**6.** For a criticism of the INS's mechanical and Kafkaesque approach in a similar case, see *Singh v. Attorney General*, 510 F.Supp. 351, 357 (D.D.C.1980).