**STEWART INFRA–RED COMMISSARY OF MASSACHUSETTS, INC., et al. Plaintiffs-Appellees,**

v.

**Patrick F. COOMEY, District Director, Immigration and Naturalization Service, Defendant-Appellant.**

No. 80–1260.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1981.

Decided Sept. 16, 1981.

Eric A. Fisher, Atty., Criminal Div., Dept. of Justice, Washington, D. C., with whom James P. Morris, Atty. Gen., Litigation and Legal Advice Section, Crim. Div., Washington, D. C., was on brief, for defendant-appellant.

Julian Soshnick, Boston, Mass., with whom Susan R. Kaplan, Boston, Mass., was on brief, for plaintiffs-appellees.

Before CAMPBELL and BOWNES, Circuit Judges, and NELSON,* District Judge.

NELSON, District Judge.

This case involves a question of the statutory division of authority between the Immigration and Naturalization Service (INS) and the Department of Labor (DOL) in determining an alien's job qualifications for the purpose of deciding upon her application for "sixth preference" visa status. Appellee Barbara Zadroga, a native and citizen of Poland, entered the United States as a non-immigrant visitor on March 29, 1972, with authority to remain for six months. Approximately one month later, she began employment, without authorization from INS, as a general helper for appellees Stewart Infra-Red Commissary of Massachusetts, Inc. (Stewart Infra-Red). In June, 1974, Stewart Infra-Red submitted an application for a labor certification to DOL on

* Of the District of Massachusetts, sitting by designation.

behalf of Zadroga, who had since been promoted to production supervisor at Stewart Infra-Red's sandwich-making facility in Needham, Massachusetts. The application was for the position of production supervisor, with one to two years of prior experience. DOL· initially denied certification, but following a remand of the matter on December 4, 1975 by a federal district court, the Department granted certification on March 11, 1976. Stewart Infra-Red then filed a petition with INS for sixth preference visa status for Zadroga.[1] On June 1, 1976, appellant Patrick F. Coomey, INS district director, denied the petition on the ground that Zadroga was unqualified for the position for which she sought preference status. He stated that "the beneficiary did not possess the required one to two years of experience as a production supervisor at the time the visa petition was filed ..." Appellees' appeal from that decision was denied by the INS Regional Commissioner on December 23, 1976. They then commenced this action in the district court seeking an order that INS halt pending deportation proceedings[2] and grant the sixth preference visa status petition. On cross-motions for summary judgment, the district court, 485 F.Supp. 345 vacated the INS decision on a basis not raised by either party, holding that "Congress has committed the question of qualification to the determination and certification of the Secretary of Labor" and that the INS "decision to substitute its judgment for that of DOL ... exceeds the scope of the Service's discretionary authority." The court ordered the case remanded to INS for it to decide whether or not Zadroga was entitled to sixth preference visa status based on factors other than job qualifications. The District Director appeals from that order. We reverse.

The district court relied upon section 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14), which authorizes and defines labor certification, to conclude that it was within the authority of DOL to determine the job qualifications of a sixth preference alien applicant. But this provision refers, not to the qualifications of alien immigrants, whether sixth preference or otherwise, but rather only to' the qualifications of domestic workers who might be displaced by such immigrants. Specifically, the section requires as one of the two criteria for an alien labor certification that qualified domestic workers be unavailable. Thus, the section provides, *inter alia*, that the following class of aliens "shall be ineligible to receive visas and shall be excluded from admission into the United States":

> Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General[3] that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in sections 1153(a)(3) and 1153(a)(6) of this title.[4]

A reference to the qualifications of a sixth preference applicant does occur, by contrast, in section 203(a)(6) of the Act, which

---

1. As the discussion *infra* at 2–3 will make clear, possession of a DOL labor certification is a prerequisite to the approval of a sixth preference visa status petition by INS.

2. As Zadroga's original six month non-immigrant visa had long since expired, she was now deportable. 8 U.S.C. § 1251(a)(2), (9); *accord, Kassab v. INS*, 322 F.2d 824 (9th Cir. 1963).

3. See n.5, *infra*, on the delegation by the Attorney General to INS of his responsibilities in the field of immigration.

4. The provisions of the Immigration and Nationality Act reproduced here and elsewhere in this opinion are from the statute as it read at the time of Stewart Infra-Red's application for a certification on behalf of Zadroga.

makes that status available to "*qualified immigrants who are capable of performing specified skilled or unskilled labor . . . for which a shortage of employable and willing persons exists in the United States.*" § 1153(a)(6) (emphasis added). And section 204(b) places the responsibility in INS[5] to determine the alien's eligibility for sixth preference status and his or her qualifications for the job.

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section . . . 1153(a)(6) of this title, [INS] shall, *if [it] determines* that the facts stated in the petition are true and *that the alien in behalf of whom the petition is made . . . is eligible for a preference status under section 1153(a)* of this title, approve the petition . . . .

§ 1154(b) (emphasis added). Thus the statute expressly empowers INS to determine whether Zadroga is qualified for the job for which she seeks sixth preference visa status, just as it clearly defines DOL as being responsible for determining the availability of suitable American workers for the job and the impact of alien employment upon the domestic labor market.[6]

The pertinent administrative regulations in effect at the time of Zadroga's application for a labor certification are generally consistent with this interpretation of the Act. INS, for example, clearly purported to determine the qualifications of an alien applying for third[7] or sixth preference visa status. It required an applicant to furnish a statement of qualifications, 8 C.F.R. § 204.1(c)(1) (1974), along with supporting documentation concerning his or her training, experience, academic records, and licenses to engage in a relevant occupation where pertinent. § 204.2(e)(1). Both the alien and the prospective employer could be required to appear "and be interrogated under oath concerning the allegations in the petition." § 204.1(c)(5). And, perhaps most significant, the INS regulations provided that in processing an application the District Director might request DOL "to furnish an *advisory* opinion concerning the qualifications of the beneficiary . . . ." § 204.2(e)(3) (emphasis added); *accord*, 8 U.S.C. § 1154(b) ("consultation with the Secretary of Labor").

The DOL regulations, in turn, contained no suggestion that DOL's role in assessing the qualifications of a sixth preference applicant was anything more than advisory. The only substantive references to sixth preference status, in fact, were found in reproductions of the above-quoted statutory provisions defining that status and labor certification. 29 C.F.R. § 60.1(a)(2), (b) (1973). In delineating the "matters to be considered" in a certification determination, the regulations specified various items of labor market information but made no mention of the applicant's job qualifications. § 60.6. Moreover, for the purpose of expediting the processing of requests, DOL promulgated a list of employment categories, denominated Schedule A, for which it had made a blanket determination that the substantive requirements of subsections

---

**5.** More precisely, the statute places this responsibility in the hands of the Attorney General. But since the Attorney General has delegated to INS his authority "to enforce the act and all other laws relating to the immigration and naturalization of aliens," 8 C.F.R. § 2.1 (1974), we have substituted a reference to INS for mention of the Attorney General here and elsewhere in this opinion in the interest of ease of understanding.

**6.** Some confusion might arise in sixth preference cases from the agencies' respective duties to examine the condition of the domestic labor market. Thus, DOL's certification that "there are not sufficient workers in the United States who are able, willing, qualified, and available . . ." would appear to overlap considerably with INS' determination that "a shortage of employable and willing persons exists in the United States." In the present case, however, we are not presented with an issue of the interplay of these two provisions.

**7.** Like the sixth preference status involved in this case, third preference status is available only to "qualified" individuals, in this instance to "qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States." 8 U.S.C. § 1153(a)(3). Like sixth preference status as well, third preference status requires a labor certification. § 1182(a)(14).

**4**

212(a)(14)(A) and (B) of Title 8 had been met. §§ 60.2(a)(1), 60.3(a). The implication of this scheme is that the job qualifications of an individual visa applicant, whether seeking preference status or not, were not the ultimate concern of DOL.[8] Finally, the regulations specifically provided that the qualifications of an alien seeking preference status as a professional or as one with exceptional ability in the arts or sciences were to be determined by INS, § 60.3(b), and that such determination was to be "accepted as conclusive" by DOL. § 60.3(d). Absent some explicit indication in the regulations, we see no warrant for inferring any intention that sixth preference applicants such as Zadroga were to be treated differently.

Although we have found no reported cases addressing this issue in the context of a sixth preference application,[9] there is am-

ple case law recognizing this division of agency authority for purposes of a third preference application.[10] In *Orcales v. INS*, 431 F.2d 817 (9th Cir. 1970), for example, an alien sought third preference status as a member of the professions, *viz.*, an elementary school teacher. Her application for "pre-certification," that is, a determination that the position she sought was one for which blanket certification had been issued, was denied by DOL on the ground that "her qualifications which include less than a bachelor's degree are not acceptable . . . . for certification as a member of the professions in the field of education." *Id.* at 820. In reversing the INS Regional Director's subsequent denial of third preference status, the court stated:

> While Labor can, on this issue [of whether petitioner could qualify as a profes-

---

**8.** This is not to say that DOL took no interest in the qualifications of visa applicants. With respect to aliens seeking certification for a Schedule A position, DOL directed the State Department or INS to determine whether "the alien's qualifications conform with the schedule requirements and occupational descriptions," 29 C.F.R. § 60.3(a) (1973), and it retained the authority to review the State Department's, but apparently not INS', decision in this regard. § 60.4(b). It is not clear from these provisions exactly what determination was purportedly assigned to the State Department or to INS. Specifically, it is not clear whether the determination was simply whether the *job* for which the alien sought certification did in fact come within the definition of a job listed on Schedule A, or whether in addition to this a determination was required that the alien was *qualified* for the job. (Under the current regulations, by contrast, the determination is specified to be of "whether or not the alien is qualified for and intends to pursue the Schedule A occupation." 20 C.F.R. § 656.22(g) (1980). But DOL's role is clearly limited to provision of "an advisory opinion as to whether the alien is qualified for the Schedule A occupation," and the "Schedule A determination of the INS or Department of State shall be conclusive." § 656.22(g)(1)–(2)). If the latter determination was intended, it is significant that at least as between it and INS DOL did not purport to have the ultimate power to make that determination. In any event, whatever power DOL purported to have in the Schedule A context would have to be consistent with the statute. And, as Zadroga is not seeking a Schedule A position, that issue is not now before us.

We also note that DOL required from all labor certification applicants a statement of

qualifications. 29 C.F.R. § 60.3(a)–(c) (1973). From this fact alone, however, there is no basis for inferring that DOL claimed final authority for determining the job qualifications of all such applicants, including those seeking sixth preference status. Indeed, as noted *supra*, at 3, INS imposed its own requirement of a statement of qualifications from third and sixth preference applicants. In the present context, it is sufficient to note that DOL's request for Zadroga's qualifications is fully consistent both with its role in offering an advisory opinion on her eligibility for sixth preference status and with its statutory duty of determining the availability of qualified American workers for the job. See discussion of *Castaneda-Gonzalez, infra*, at 5–6.

**9.** In an unpublished decision, the Sixth Circuit has overturned as arbitrary an INS finding that an alien was unqualified for a sixth preference job as an insurance company employee, thereby implying that INS possesses the authority to evaluate job qualifications in this context. *Lee v. INS*, No. 77–3060 (6th Cir. July 5, 1978). *Cf. also Lau v. INS*, 555 F.2d 1036, 1044 (D.C.Cir. 1977) (sixth preference status "signifies approval of the recipient's qualifications to perform specified skilled or unskilled labor") (dictum).

**10.** See n.7, *supra*, for discussion of the similarities between third and sixth preference status under the statute. Also, many of the regulations governing third and sixth preference visa applications at the time of Zadroga's petition were similar or identical. *See, e. g.*, 8 C.F.R. § 204.1(c) and § 204.2(e) (1974).

sional], act authoritatively in so far as its judgment bears on pre-certification, its conclusions are only advisory in so far as they bear on petitioner's entitlement to Third Preference status. The responsibility for that determination rests on I & NS . . . .

. . . . If [the Regional Director] believed that Labor's ruling that petitioner did not qualify as a member of the professions was binding on him, he was in error.

*Id. See also, e. g., Reyes v. Carter,* 441 F.2d 734 (9th Cir. 1971) (per curiam) (no abuse of discretion in determination by INS that alien did not qualify as accountant) and *Lee v. INS,* 407 F.2d 1110 (9th Cir. 1969) (no abuse of discretion in determination by INS that alien did not qualify as musician of exceptional ability). We see no basis in the statute, regulations, or case law for concluding that INS' authority is any less extensive in the sixth preference setting.[11]

In reaching the contrary result, the district court also relied on *Castaneda-Gonzalez v. INS,* 564 F.2d 417 (D.C.Cir.1977). There, INS sought to deport an alien under section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), as an individual who was excludable from this country at the time of entry. INS charged that he was excludable as an alien seeking to perform labor without the DOL certification required by 8 U.S.C. § 1182(a)(14). Although he had in fact been certified—as a specialty cook of Spanish food—INS ordered him deported "on the basis of its own determination that Castaneda-Gonzalez was not qualified for the position for which the Secretary of Labor had certified him and its conclusion that because of this he could be treated as if he had no labor certificate at all at the time of his entry." 564 F.2d at 422. The court concluded that such INS invalidation was beyond the scope of its statutory authority:

There is nothing in subsection 212(a)(14) . . . . that permits [INS] to ignore the Secretary's determination because [it] finds factually defective and to decide for [itself] that under the correct facts a labor certificate should not have been granted . . . . [T]he substantive certification decision under subsection 212(a)(14) lies exclusively with the Secretary of Labor . . . .

*Id.* at 425.[12] With this proposition we have no quarrel. *See Spyropoulos v. INS,* 590 F.2d 1, 3 (1st Cir. 1978).

The district court apparently drew from *Castaneda-Gonzalez* the further conclusion that the question of a sixth preference applicant's qualifications constituted one of the substantive determinations underlying the issuance of a labor certification and thus was exclusively within DOL's domain. Some confusion does arise from the fact that in *Castaneda-Gonzalez* the specific reason that INS sought to reevaluate the DOL certification concerned the alien's job qualifications. But the court did not state that one of DOL's functions was to determine an alien applicant's qualifications as such. In fact, the court noted: "The job qualifications of an alien laborer are matters to be considered by his prospective employer and the Secretary of Labor, *insofar as they bear on his determination whether there are capable American workers available to fill the job.*" 564 F.2d at 429 (emphasis added). It is important to understand that in *Castaneda-Gonzalez* INS was not passing upon an application for visa preference status. Instead, INS was seeking to deport an alien for entering the United States to perform labor without possession of a labor certification. Since the clear language of section 212(a)(14) vests sole authority in the Secretary of Labor to issue a labor certification and since an alien to whom such a certifica-

---

11. In the third preference context, of course, the alien's qualifications constitute the pivotal inquiry, whereas a sixth preference determination focuses upon the state of the domestic labor market with the alien's qualifications playing a more tangential role. Nonetheless, the qualifications issue remains part of INS' scope of concern in both cases.

12. The court indicated that the Secretary's certification can be ignored only "where the facts clearly demonstrate, on their face, that one of the two requirements of subsection 212(a)(14) is not met." 564 F.2d at 432.

tion has been issued cannot be excluded or deported under that particular section, the court in that case was on firm statutory ground in holding that INS could not re-evaluate the alien's qualifications for the certification. By contrast, this case involves the grant or denial of visa preference status, authority for which is equally clearly vested in INS under sections 203(a) and 204(b). The *Castaneda-Gonzalez* court itself recognized that the visa preference problem is "an entirely different legal issue" from that of exclusion and deportation under 8 U.S.C. § 1182. 564 F.2d at 428–29.[13] Indeed far from disputing the authority of INS to determine an alien's qualifications in the context of a petition for visa preference status, the court explicitly acknowledged "the authority of the numerous cases cited by the Service for the proposition that [INS] may deny . . . preference requests without reference to the Secretary of Labor because [it] determines that the applicant alien does not qualify for the preference category relied on." 564 F.2d at 428 (footnote omitted).

For the foregoing reasons, we think the district court erred in its interpretation of the Act. Since the court did not reach the question of whether there was sufficient evidence to support INS' determination that Zadroga was unqualified for the position for which she sought sixth preference

visa status, we remand the matter for further proceedings not inconsistent with this opinion.[14]

*Reversed and remanded.*

---

13. This distinction may also throw some light on the dictum in *Spyropoulos v. INS*, 590 F.2d 1, 3 (1st Cir. 1978), to the effect that "[a]n immigrant's qualifications for a job may well be the exclusive concern of the Secretary of Labor." That statement was made in the context of a discussion of *Castaneda-Gonzalez*, and can only be said to refer to the particular deportation situation involved in that case, which was itself significantly different from the deportation situation involved in *Syropoulos.* However, as mentioned earlier, *Castaneda-Gonzalez* did not hold that one of DOL's functions in evaluating an alien's application for a labor certification was to determine the alien's job qualifications as such, but rather, job qualifications were mentioned as relevant to DOL only on the issue of the availability of capable domestic workers for the job. In any event, *Syropoulos* has no bearing on the visa preference problem under consideration here.

14. The reason which INS assigned for its determination was that as of the date of Zadroga's

application for a labor certification she did not possess the required one to two years experience as a production supervisor. Although there was originally some disagreement among the parties as to whether that date should be the date of the initial filing with the DOL in June 1974, or the date of the U.S. District Court's remand to DOL in December 1975, we understood counsel for INS at oral argument before this court to state that INS would be willing to use the later date, as requested by Zadroga. As there is no problem here of an alien preference applicant seeking to secure the benefit of an early priority date by utilizing employment experience gained subsequent to that date, *compare Matter of Katigbak*, 14 I & N Dec. 45, 49 (R.C. 1971), use of the later date would seem to be fair and equitable. On remand, therefore, we anticipate INS will acquiesce in having Zadroga's job qualifications determined as of December 1975.