Nooria MADANY, Appellant,

v.

William French SMITH, et al., Appellees.

No. 82–1122.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 3, 1982.

Decided Jan. 4, 1983.

Eric Sitarchuk,* for appellant.

Richard A. Stern-Boswell, Professor, George Washington University, National Law Center, Washington, D.C., was on the brief for appellant.

Richard M. Evans, Atty., Dept. of Justice, Washington, D.C., for appellees.

Lauri Steven Filppu and William C. Brown, Attys., Dept. of Justice, Washington, D.C., were on the brief for appellees.

Before ROBINSON, Chief Judge, and MacKINNON and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant, Nooria Madany, challenges the statutory authority of the Immigration and Naturalization Service (INS) to deny an alien's petition for a third preference visa classification when, in the view of INS, the alien does not possess the requisite job qualifications. Appellant's claim stems from the ambiguity surrounding the proper division of authority between INS and the Department of Labor (DOL) to review alien qualifications asserted in the DOL-issued labor certification. We hold that INS is vested with primary authority to review such alien qualifications. Accordingly, we affirm the district court's holding that INS properly denied appellant's petition.

## I. FACTS

Madany, a native citizen of Afghanistan, has successfully completed a three-year professional nursing course in India and is a member of the nursing profession for the purposes of the Immigration and Nationality Act, §§ 101–360, 8 U.S.C. §§ 1101–1503 (1976 & Supp. V 1981) (Act). *See* Appellee Brief 8. Madany entered the United States on July 3, 1979 as a business visitor, with authority to remain until February 20, 1980. In December 1979, Clinch Valley Communi-

ty Hospital (Clinch Valley) submitted an application to DOL on Madany's behalf, seeking a labor certification as a nurse. The labor certification job description included the requirement that the prospective employee be able to obtain, or already have, a Virginia nursing license. Administrative Record (A.R.) 40. In her statement of qualifications, appellant claimed she had the "ability to obtain [a] nursing license in the State of Virginia" and that she "will obtain [a] Virginia R.N. license." A.R. 43. DOL granted the labor certification based on this claim.

Subsequently, on December 21, 1979, Clinch Valley filed with INS a petition, which included the DOL-issued labor certification, to obtain a third preference visa classification for appellant. Approximately nine months later, on September 10, 1980, the INS District Director denied the petition, finding that Clinch Valley had not met its burden of establishing that Madany met the "specific requirements of the individual labor certification"—in particular, that she was able to obtain a nursing license. A.R. 35. The only evidence presented on this issue was her eligibility to take a nursing license exam and her registration to take the July 1980 registered nurse's exam for the District of Columbia. INS concluded that this evidence was insufficient to sustain appellant's burden of proof, especially when coupled with the low 20% passing rate for foreign nurse candidates on licensing exams. A.R. 34. On appeal, the INS Regional Commissioner upheld the District Director's decision. A.R. 21–22.

Appellant then filed this action for declaratory relief in the district court, arguing that INS' review of her ability to obtain a Virginia license was outside its statutory authority; that she had, in fact, demonstrated an ability to obtain a license; and that, having met the relevant statutory criteria, she was entitled to a third preference visa classification. In a memorandum opinion, the district court granted summary judgment in favor of INS. Joint Appendix

* Student counsel pursuant to Rule 20 of this Court's General Rules.

(J.A.) 79. The court found that INS properly may review whether a particular alien meets the specific qualifications of the labor certification under its general power to determine whether the alien qualifies for the preference classification sought. The court also held that INS' conclusion in this case was supported by substantial evidence and did not constitute an abuse of discretion.

## II. THE VISA PREFERENCE CLASSIFICATION DESIGN

Section 203(a)(3) of the Act establishes the criteria for the grant of a third preference visa classification. The alien must be a "qualified immigrant" who possesses membership in a profession or an exceptional ability in the arts or sciences, and whose services in the professions, arts, or sciences are sought by an employer. 8 U.S.C. § 1153(a)(3) (Supp. V 1981). Section 212(a)(14) of the Act additionally preconditions third preference classifications on the receipt of a labor certification from DOL. The purpose and content of the labor certification are explicit. The Secretary of Labor must certify that:

(A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.

8 U.S.C. § 1182(a)(14) (Supp. V 1981). The purpose of the third preference classification petition, therefore, is to show that the alien is a member of a profession, has been offered employment in that profession, and has been issued a labor certification.

 The Act also sets forth the procedure for granting the petition:

After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(a)(3) or 1153(a)(6) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien . . . is eligible for a preference status under section 1153(a) of this title, approve the petition . . . .

Act § 204(b), 8 U.S.C. § 1154(b) (1976); cf. 8 C.F.R. § 2.1 (1980) (delegating all powers of the Attorney General relating to the immigration and naturalization of aliens to INS). In addition to this broad mandate to investigate alien eligibility, the Act endows INS with the specific authority to reject a petition upon a finding that the alien procured any document offered in support of the petition through fraud or willful misrepresentation of a material fact, Act § 212(a)(19), 8 U.S.C. § 1182(a)(19) (1976), and to revoke a previously granted petition at any time for "good or sufficient cause," Act § 205, 8 U.S.C. § 1155 (1976). The failure to acquire a job qualification that was critical to the initial grant of the petition may constitute such sufficient cause. See Navarro v. District Director, 574 F.2d 379 (7th Cir.), cert. denied, 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978) (failure to acquire nursing license in two years is sufficient cause to permit revocation of a third preference classification); see also 8 C.F.R. § 204.4(b) (1980).

## III. THE DIVISION OF AUTHORITY

The essence of appellant's argument is that the content of the labor certification and the findings implicit therein are the product of DOL in performance of its statutory functions under section 212(a)(14). The grant of the labor certification, then, constitutes a final determination by DOL and, as such, is not the proper subject of review by INS. To the extent that the actions of DOL and INS interface, because a labor certification is a prerequisite to the preference classification, appellant urges that the scope of INS inquiry is limited to the fact of certification and nothing more.

 It is true that determinations vested by statute with one agency are not

normally subject to horizontal review by a sister entity, absent congressional authorization to that effect. But this case does not present an instance of INS trespass onto DOL territory. Appellant misreads the nature of DOL's findings and the arrangement that is implicitly, if not explicitly, set up by the Act. Although the Act allocates a limited role to DOL, it vests primary responsibility for implementation with INS.

There is no doubt that the authority to make preference classification decisions rests with INS. The language of section 204 cannot be read otherwise. *See Castaneda-Gonzalez v. INS*, 564 F.2d 417, 429 (D.C.Cir.1977). In turn, DOL has the authority to make the two determinations listed in section 212(a)(14). *Id.* at 423. The necessary result of these two grants of authority is that section 212(a)(14) determinations are not subject to review by INS absent fraud or willful misrepresentation, but all matters relating to preference classification eligibility not expressly delegated to DOL remain within INS' authority.

The review here in question concerns the alien's skills or qualifications and is not one of the inquiries expressly allocated to DOL by section 212(a)(14). This does not mean that DOL cannot, or does not, undertake analysis of an alien's qualifications as it performs its statutory functions. Indeed, DOL may gauge an alien's skill level in evaluating the effect of the alien's employment on United States workers. The fact that DOL may find such an analysis useful, however, does not foreclose INS from considering alien qualifications in the preference classification decision.

The proper division of authority is perhaps best reflected in the current practice of the agencies. Regulations promulgated by both INS and DOL indicate that DOL does not regularly make a determination of the alien's qualifications, but that INS does. *See* 8 C.F.R. §§ 204.1(c), 204.2(e)(1) (1980) (requiring the alien to submit documentary evidence of qualifications to INS); *id.* § 204.2(e)(3) (providing that INS may request an "advisory opinion" from the Em-

ployment and Training Administration regarding the alien's qualifications); 20 C.F.R. §§ 656.30(d), 656.31 (1979) (INS has sole authority to invalidate a labor certification on the basis of fraud or willful misrepresentation). This is readily apparent from the manner in which DOL handles "Schedule A" occupations. Schedule A lists occupations for which DOL has made a blanket determination under section 212(a)(14) that alien employment will not adversely affect any qualified United States worker. 20 C.F.R. § 656.10 (1979). If an alien claims Schedule A employment, the relevant forms are to be filed directly with INS. *Id.* § 656.22(a) (1979). INS then evaluates the alien's qualifications but may, if it desires, request an advisory opinion on the matter from DOL. The determination of INS is final and not subject to review by DOL. *See* 8 C.F.R. § 204.2(e)(4) (1980); 20 C.F.R. § 656.22(g) (1979). Thus, the agencies' regulatory framework allocates the authority to pass on an alien's qualifications to INS. *See Stewart Infra-Red Commission of Massachusetts, Inc. v. Coomey*, 661 F.2d 1 (1st Cir.1981) (upholding INS' authority to review an alien's compliance with the labor certification qualifications when granting a sixth preference classification petition); *accord Denver Tofu Co. v. District Director*, 525 F.Supp. 254 (D.Colo.1981).

We are aware that at least one district court addressed the identical issue in the context of a sixth preference classification petition. *See Singh v. Attorney General*, 510 F.Supp. 351 (D.D.C.1980), *aff'd on other grounds*, 672 F.2d 894 (D.C.Cir.1981) (mem.). Sixth preference classifications are granted to "qualified immigrants who are capable of performing specified skilled or unskilled labor ... for which a shortage of employable and willing persons exists in the United States," Act § 203(a)(6), 8 U.S.C. § 1153(a)(6) (Supp. V 1981), and also are prefaced upon the receipt of a labor certification. The *Singh* court read the legislative history of the Act to signify that DOL is vested with primary authority to review alien qualifications, relying in part on the following statement by Senator Philip Hart:

It is my understanding that when an immigrant seeks admission under these categories as special immigrants or preference immigrants and a determination by the Secretary of Labor is required, the Secretary will make a certification in the case of the individual immigrant. He must ascertain the prospective immigrant's skill and will match those skills with the employment and manpower reports he has available from the labor market area where the immigrant expects to reside. On the basis of such an analysis, the Secretary will be in a position to meet the requirement of the law, and provide the type of employment safeguards sought in this legislation.

111 CONG.REC. 24,239 (1965) (*quoted in Singh,* 510 F.Supp. at 355). This statement must be placed in context, however, and considered in conjunction with the innumerable other statements of interpretation made during the floor debates. These statements describe DOL's labor certification functions almost exclusively in terms of the two determinations specified in section 212(a)(14). *See, e.g.,* 111 CONG.REC. 21,-579, 21,586, 21,767 (1965); H.R.Rep. No. 745, 89th Cong., 1st Sess. 21 (1965).

Given the language of the Act, the totality of the legislative history, and the agencies' own interpretations of their duties under the Act, we must conclude that Congress did not intend DOL to have primary authority to make any determinations other than the two stated in section 212(a)(14). If DOL is to analyze alien qualifications, it is for the purpose of "matching" them with those of corresponding United States workers so that it will then be "in a position to meet the requirement of the law," namely the section 212(a)(14) determinations. We therefore do not follow the ruling in *Singh* to the extent it suggests that INS does not have primary authority for preference classification decisions. This conclusion does not conflict with the results of those cases citing *Singh* for the proposition that DOL retains the authority to evaluate alien qualifications, *see Joseph v. Landon,* 679 F.2d 113, 116 (7th Cir.1982); *Ubeda v. Palmer,* 539 F.Supp. 647, 650 (N.D.Ill.1982), as both cases distinguished *Singh* and then proceeded to uphold INS' authority to revoke or deny a preference petition on other grounds.

### IV. THE LICENSE REQUIREMENT

Given that review of Madany's qualifications was within the discretionary authority of INS, its decision must be sustained if based on substantial evidence and not an abuse of discretion. *Wing Ding Chan v. INS,* 631 F.2d 978, 980–81 (D.C.Cir. 1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981). Appellant maintains that INS abused its discretion by imposing a job requirement on her beyond that contemplated by DOL.

The language at issue states that appellant "must be able to obtain Virginia nursing license or have Virginia nursing license." A.R. 40. Because appellant did not already possess a Virginia nursing license, the controversy focuses on the significance of the words "able to obtain." Appellant argues that this language means "eligible to sit" for the examination, and that she satisfies such a requirement through her foreign nursing education. In support of this interpretation, appellant cites to a letter solicited from DOL clarifying the requirement's purposes. J.A. 78. This letter indicates that the requirement was designed to serve two purposes. First, it was intended to protect similarly situated United States workers who did not currently possess a Virginia license but who could sit for the exam. The second and primary purpose, however, was to ensure compliance with the state law requiring that professional nurses possess a license in order to be legally employed. Va.Code § 54–367.17 (1982); *see* 20 C.F.R. § 656.21(b)(16) (1979) (terms of job opportunity offered to alien must conform to the requirements of federal, state, and local law). This second purpose undermines the contention that mere eligibility to take the examination satisfies the requirement. INS' common sense interpretation that the prospective employee must have an actual ability to obtain the

license within a reasonable time better comports with DOL's statement of purpose. Thus, it is not an abuse of discretion for INS to require that appellant show some likelihood of eventually passing the exam.

The next inquiry must be whether appellant sustained this burden. Appellant presented evidence of her nursing education, her registration to take the District of Columbia nursing exam, and possible reciprocity between the District of Columbia and Virginia. INS found this evidence to be insufficient, and the district court agreed.

■ We are wary of jumping too quickly to the conclusion that the evidence, because it did not show that appellant in fact would obtain the license, was thereby insufficient to sustain her burden. Insofar as it speaks to appellant's future potential, the "able to obtain" requirement is something that cannot, except in rare instances, be concretely proved or disproved now. In evaluating an individual alien's satisfaction of such a requirement, INS cannot require that the alien already have acquired the skill or met the qualification, thereby eliminating the grace period contained within the requirement when it states that future compliance is sufficient. Such a burden would effectively permit INS to impose an additional or different job requirement, something which it has no authority to do.

■ Between those two extremes, mere eligibility to sit for the examination and current possession of the license, lies the level of proof that balances the alien's ability to show a future qualification and INS' responsibility to ensure that, at some point, the alien will be able to perform the certified job. INS may require a preliminary showing that the alien intends to acquire and is reasonably likely to acquire the qualification in question within a reasonable period of time. This reasonable period of time should vary according to the nature of the qualification, the usual time period it takes to acquire the qualification, and the prospective employer's needs and expectations. But once this preliminary showing is made, the alien has satisfied her burden of

demonstrating compliance with this type of job requirement. Thereafter, INS can deny the preference classification on that basis only if there is a finding, supported by substantial evidence, that the *particular* alien actually will not be able to acquire the specified qualification. For this reason, INS cannot rely on the low passing rate of foreign nurse candidates in general as the basis for rejecting appellant's petition once a preliminary showing is made.

■ In this case, however, appellant made no preliminary showing that she was able to pass a nursing exam and thereby acquire a Virginia nursing license. The mere act of registration to take the exam does not demonstrate an ability to pass the exam, at least absent a showing that the exam is merely a pro forma exercise or that the eligibility requirements are such that eligibility can be equated with passing the exam. Examples of evidence tending to support appellant's assertion of a present ability to pass the exam might include the successful completion of a similar exam, enrollment in courses designed to aid passage of the exam, or even a failed exam indicating appellant was close to passing when it is not unusual for applicants to take the exam more than once. Given the absence of such or similar evidence, however, INS did not abuse its discretion by denying appellant's preference classification petition.

■ Current regulations effectively resolve the difficulties inherent in evaluating a qualification as subjective as the one here at issue. Aliens now seeking certification as a professional nurse must either have passed the Commission on Graduates of Foreign Nursing Schools (CGFNS) examination or already possess a nursing license in the state of intended employment. 20 C.F.R. § 656.10, Schedule A(a)(3) (1982); 20 C.F.R. § 656.22(c)(3) (1982). Similarly, Virginia recently amended the code provision setting forth the prerequisites for a registered nurse's license to specify that foreign-educated nurse candidates may be required to pass the CGFNS examination. Va.Code

§ 54–367.13(5) (1982). In the absence of such clear statements of minimum requirements for a specific occupation, however, as was the case at the time of appellant's petition, INS cannot seek to impose those requirements indirectly by incorporating them into the alien's burden of proof for a particular job qualification. Rather, it is the language of the labor certification job requirements that will set the bounds of the alien's burden of proof.

We recognize that the statutory division of authority between DOL's labor certification determination and INS' preference classification decision can lead to some discontinuity insofar as DOL-imposed job requirements are subject to interpretation by INS in its review of the alien's qualifications. Accordingly, INS will need the sensitivity to coordinate DOL and INS interpretations and to follow the Act's directive to consult with DOL when correctable discrep-ancies between the alien's qualifications and the labor certification job requirements appear. INS must also recognize that DOL bears the authority for setting the *content* of the labor certification and that it cannot impose job qualifications beyond those contemplated therein. However delicate that task may be in future cases, we have no reason to upset the decision of INS in this case.

For the reasons stated above, the judgment of the district court is

*Affirmed.*