**Shiraz HASSANALI, Ameena Hassanali, Ashraf Hassanali, and Mohammed Kaderali, Plaintiffs,**

v.

**ATTORNEY GENERAL, Defendant.**

**No. 84–2772.**

United States District Court, District of Columbia.

Nov. 30, 1984.

Gordon Charles, Washington, D.C., for plaintiffs.

Carol Galbreath, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiffs filed this action pursuant to the Immigration and Nationality Act (Act), specifically 8 U.S.C. §§ 1101–1503, and the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Plaintiffs request that the Court declare that the denial of the sixth preference visa petition for Shiraz Hassanali (Hassanali), and the efforts to deport Hassanali and his family are "contrary to the applicable laws and regulations, unsupported by reasonable, probative, and substantial evidence, and an abuse of discretion." Plaintiffs seek to have the Court declare that Hassanali is entitled to approval of the sixth preference visa petition and for the Court to enjoin the defendant from "detaining, deporting, or requiring the departure from the United States" of Hassanali and his family. The case is now before the Court after consolidation of the hearing on the motion for a preliminary injunction with a hearing on the merits.[1]  See Fed.R.Civ.P. 65(a)(2).

### I

The underlying facts are as follows: Plaintiff Kaderali is the owner of a gasoline station and desires to employ Hassanali as the manager of that station. Hassanali and his family are citizens of India.

1. The case was filed on September 10, 1984, and came before the Court later that afternoon for a hearing on plaintiffs' motion for temporary restraining order. At that hearing, counsel for the defendant advised the Court that the defendant would take no action to deport Hassanali until the hearing on plaintiffs motion for temporary restraining order. Defendants requested that the hearing on the motion for temporary restraining order be continued over. That representation was incorporated into an order entered by the Court. *See* Order filed September 11, 1984. The motion for temporary restraining order was heard on September 17, 1984 and the defendant once again agreed to maintain the status quo pending a hearing on plaintiffs' motion for preliminary injunction scheduled for September 19, 1984. The Court also advised the parties that, in view of the issues raised, the court would consolidate the hearing on the motion for preliminary injunction with the hearing on the merits. *See* Fed.R.Civ.P. 65(a)(2). The Court heard further arguments on September 19, 1984 and the parties filed additional memoranda on October 26, 1984. Throughout this period, and pending a decision by the Court, the defendants have maintained the status quo.

The Court expresses its appreciation to the defendant for agreeing to withhold action against the Hassanali family since this allowed the parties to present their evidence and arguments in an orderly fashion, and it permitted the Court additional time to consider the issues presented in this case.

On June 2, 1980, Kaderali submitted an application for a labor certification on behalf of Hassanali who was to be employed as a gasoline station manager. The application as submitted reflected that the employer was to be L & M Service Center at 471 2d Avenue, Troy, New York. The application was submitted as the first step to have Hassanali granted a sixth preference visa. *See* 8 U.S.C. § 1153(a)(6). The application was approved and a labor certification was issued by the Department of Labor (DOL) on March 2, 1981. Complaint Exhibit A. That action gave Hassanali a June 2, 1980 priority date on the waiting list for sixth preference immigrants from India.

The Immigration and Naturalization Service (INS) commenced deportation proceedings against Hassanali and his family on February 2, 1981, charging that they had been admitted to this country as visitors on or about September 1, 1979, and had overstayed their authorized period of temporary stay. Complaint Exhibit B. On March 18, 1981, Kaderali submitted to INS a visa petition seeking sixth preference classification for Hassanali on the basis of the labor certification. Complaint Exhibit C. At the final deportation hearing on March 11, 1981, the Immigration Judge granted Hassanali and his family three months for their voluntary departure from the United States, apparently on the basis of the pending sixth preference visa petition. Counsel for Hassanali wrote the INS District Director in Buffalo, New York, calling attention to the submission of the sixth preference visa petition submitted to INS at their office in Albany, New York, and requesting an extension of the voluntary departure date. The Buffalo INS office responded, noting that it had no record of the papers submitted to the Albany INS office. Counsel responded on June 11, 1981, and advised the Buffalo INS office of the date the petition was submitted and renewed his request for an extension of time. No response was ever received from INS, however, INS did not pursue the deportation of Hassanali while the petition was under consideration by its Albany office.

INS took no action on the sixth preference visa petition for almost three years, and the plaintiffs maintain, and it is apparently undisputed, that the visa petition date became current during the months of June, July, August and September 1982, and for the entire fiscal year commencing October 1983, including the month of September 1984.

In the meantime, when Kaderali's lease on the Troy, New York, gasoline station was about to expire, the lessor proposed to raise the rent from $1,000 to $1,800 per month. Kaderali rejected the increase as exorbitant and terminated the lease on July 30, 1982. He found a new location the following year and reopened his business on September 14, 1983, under the new trade name, MKB Getty Service Corporation, which, notwithstanding the name, was not incorporated, and which, like the previous gasoline station, was wholly owned and operated by Kaderali. The new station is located in Latham, New York, approximately 11 miles from the old station. Hassanali was employed as the manager of both stations and Kaderali continues to adhere to his offer to employ Hassanali on permanent basis as the manager of his service station.

On March 20, 1984, the District Director of INS at Buffalo denied the visa petition. Complaint Exhibit F. In his decision he cited DOL regulation 20 C.F.R. § 656.-30(c)(2) and ruled that, "[t]he record indicates that the L & M Service Station ceased to exist in July 1982, thereby terminating the validity of the labor certification obtained for the position of manager. In view of the foregoing, the position as certified no longer exists. The petition is therefore denied." *Id.* The appeal to the INS Assistant Commissioner was denied. Complaint Exhibit G. In denying the appeal, the Assistant Commissioner ruled that:

> There is no evidence that the petitioning entity [L & M Service Center] continues to exist. There is substantial evidence that it does not. Therefore the job offer,

made by this specific entity, also no longer exists in that the employer-employee relationship detailed has ended. There is no evidence of successorship of rights and liabilities. The ostensible owners decision to establish a new, similar business enterprise in the same area is not a basis for a finding of continuity for the purposes of this petition. Pursuant to 20 CFR 656.30(c)(2) the labor certification is no longer valid. Further, a review of this matter establishes no basis for estoppel.

Thereafter, the District Director advised Hassanali that INS intended to deport him from the United States.

In seeking relief from this Court, the plaintiffs made two arguments, one which is no longer applicable. First, they argued that the attempt to deport Hassanali and his family "ignores the legislative policy expressed in the Simpson-Mazzoli Bill". That argument is no longer valid since the Bill was not enacted by Congress. The second argument is that the defendant's subordinates "erroneously assumed authority to invalidate a labor certification issued by [DOL], without soliciting the advice of that Department." Plaintiffs also contend that the defendant has misread the DOL regulation in finding that the certification is no longer valid.

The defendant disagrees with the plaintiffs' interpretation of the applicable law and regulation, and in addition, argues that the District Court lacks jurisdiction to hear this case.

## II

The first issue which must be addressed is whether the District Court has jurisdiction to hear this case. The defendant argues that it does not and relies on 8 U.S.C. § 1105a in support of his contention that exclusive jurisdiction to consider this case rests in the Court of Appeals. Both sides to the present controversy rely upon the same case in support of the argument that the District Court does or does not have jurisdiction. In *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392

U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), the narrow question presented was whether the Court of Appeals had jurisdiction to review the denial of a stay of deportation where the order being challenged had not been entered in the course of a proceeding conducted pursuant to 8 U.S.C. § 1252. There, the petitioner, who was a native and citizen of China, entered the United States as a seaman. He eventually deserted his vessel and remained unlawfully in this country. He conceded his deportability but sought and obtained permission to depart the United States voluntarily. He did not do so and then requested a stay of deportation pending the submission of an application for adjustment of status under 8 U.S.C. § 1153(a)(7) which allows conditional entry into this country under certain circumstances. The District Director of INS denied the stay of deportation, and the petitioner commenced the proceeding in the Court of Appeals for the Third Circuit. That Court denied the petition for want of jurisdiction, 381 F.2d 542, and the Supreme Court granted certiorari and thereafter affirmed. In short, the Supreme Court held that exclusive jurisdiction in the courts of appeal vested only when the challenged order was entered in deportation proceedings conducted under Section 1252. The Court noted that, "[w]e believe that, in combination with the terms of § 106(a) [8 U.S.C. § 1252(a)] itself, these statements [debates on the floor of the House of Representatives] lead to the inference that Congress quite deliberately restricted the application of § 106(a) to orders entered during proceedings conducted under § 242(b) [8 U.S.C. § 1252(b)], or directly challenging deportation orders themselves." 392 U.S. at 215, 88 S.Ct. at 1975–76 (footnote omitted).

[1] The plaintiffs contend that *Cheng Fan Kwok* supports the argument that the District Court does have jurisdiction over the instant proceedings. This Court agrees. The matter before the Court does not result from an order entered in a deportation proceeding; rather, it is, in effect, an appeal from the decision of the District

Director denying plaintiff's sixth preference visa petition. Moreover, the fact that the defendant is seeking to deport Hassanali and his family, does not convert this action to one brought under Section 1252.

The Court has jurisdiction to entertain the present action.

### III

Before addressing the merits, it is necessary to briefly review the procedures followed when an alien applies for a sixth preference visa.

Most aliens who seek to enter the United States for permanent residence are subject to certain numerical limitations. *See* 8 U.S.C. § 1151. The sixth preference visa permits the entry of aliens "who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6). An alien seeking to enter the United States for the purpose of performing skilled or unskilled labor may not do so unless the Secretary of Labor certifies (a) that there are not sufficient workers in the United States "who are able, willing, qualified, and available *at the time of application for a visa* and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (b) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed." 8 U.S.C. § 1182(a)(14) (emphasis the Court's).

■■■ The primary purpose for the requirement for the certification by DOL is to protect American labor. H.R.Rep. No. 1365, 82d Cong. 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Ad.News 1653, 1705. The House Report on the Immigration and Nationality Act, provided that while the Act would remove certain "contract labor clauses" from the law, "it [Section 1152(a)(14)] provides strong safeguards for American labor." *Id.* The Committee observed that "[i]t is the opinion of the committee that this provision will adequately provide for the protection of American labor against an influx of aliens entering the United States for the purposes of performing skilled or unskilled labor where the *economy of individual localities* is not capable of absorbing them at the time they desire to enter this country." *Id.* (emphasis the Court's.) This is a determination which lies exclusively with the Secretary of Labor. *Castanda-Gonzalez v. Immigration and Naturalization Service*, 183 U.S. App.D.C. 396, 403–404, 564 F.2d 417, 424–425 (1977). *See also Madany v. Smith*, 225 U.S.App.D.C. 53, 57, 696 F.2d 1008, 1012 (1983). The determinations by DOL "are not subject to review by INS absent fraud or willful misrepresentation, but all matters relating to preference classification eligibility not expressly delegated to DOL remain within INS' authority." *Madany, supra*, 225 U.S.App.D.C. at 57, 696 F.2d at 1012. *See also* 8 U.S.C. § 1154(b); 20 CFR § 656.30(c)(2).

While the above two questions have been expressly delegated to DOL, since that agency has the primary responsibility for protecting American labor, INS may still determine whether an alien, who has obtained labor certification from DOL, is qualified for the job certified. *Madany, supra*, 225 U.S.App.D.C. at 57, 696 F.2d at 1012. In *Madany*, the court observed that, "[t]he review here in question concerns the alien's skills or qualifications and is not one of the inquiries expressly allocated to DOL by [Section 1182(a)(14)]." *Id. See also K.R.K. Irvine, Inc. v. Landon*, 699 F.2d 1006, 1008 (9th Cir.1983); *Stewart Infra— Red Commissary of Massachusetts, Inc. v. Coomey*, 661 F.2d 1, 3–5 (1st Cir.1981).

Thus, the function of DOL in relation to an alien's application for sixth preference status is quite limited consistent with the agency's role as protector of American labor. Once DOL has certified that there are not sufficient American workers able, willing, qualified and available and that the employment of the alien will not adversely affect American labor, its primary role comes to an end and INS must then rule on whether the visa should be granted.

Therefore, even if DOL should certify that, for example, there are no American machinist ready and able to work and that admission of an alien machinist would not adversely affect American labor, INS may still determine in making its decision whether the alien is in fact a qualified machinist.

## IV

The instant case presents five troublesome issues.

*First,* the plaintiffs initiated their application for a sixth preference visa on June 2, 1980. Their application was based on the fact that Hassanali was to be employed as a gasoline station manager in Troy, New York. DOL issued a labor certification on March 2, 1981.[2] At that point, INS was required to accept the labor certification absent some indication of fraud or willful misrepresentation, which is not an issue in this case. If INS had thereafter immediately acted on the plaintiff's petition, it presumably would have granted the petition because the only reason it has denied the petition is that the job no longer exists. Therefore, it appears that the plaintiffs lost their ability to obtain a visa through no fault of their own and even though counsel had made inquiries as to the status of the petition. This raises the question whether INS is now estopped to deny the petition. The Court need not address this issue.

*Second,* and related to the above issue, is whether in rejecting the petition on the grounds that the job no longer exists, INS must look to the facts as they existed at the time the petition was filed or within a reasonable time thereafter, or whether the agency may look to the facts at the time it acted on the petition, notwithstanding that it delayed action for almost three years. Congress has provided that DOL must certify whether there are "no sufficient workers ... who are able, willing, qualified, and available *at the time of application for a visa*". The time of application for a visa was March 1981, not March 1984 when the petition was denied. Once again the Court concludes that it need not address this issue in view of its disposition of this case.

*Third,* is whether the determination made by INS was in a matter which is delegated to DOL pursuant to Section 1182(a)(14). The matters delegated to DOL relate to the protection of American workers not to whether the alien is qualified for the position and not to whether the job is available. While it is true that DOL must look to the nature of the job and at least, preliminarily make a determination about the nature of the employment, it does so only in connection with its responsibility to determine whether there are available American workers and whether the admission of the alien will adversely affect American labor. As this Court has observed, the role of DOL stops there. *See Stewart Infra—Red, supra,* 661 F.2d at 5. On the other hand, the basis of the rejection by INS is that the labor certification is no longer valid because the job is no longer in existence. The question of the validity of the labor certification rests with DOL, not with INS.

To state it differently, the Court must look to the reasons given by INS for its rejection of the petition rather than the grounds upon which INS could have rejected the petition. In his decision rejecting the petition, the District Director conceded that Hassanali had an "approved labor certification". Complaint Exhibit F. He then went on to give his reasons for rejection, that is, that 20 C.F.R. § 656.30(c)(2) "provides that a labor certification involving a specific job offer is valid only for the par-

---

**2.** It seems strange that in Troy, New York, a city with a population of approximately 63,000, which is part of the Albany, New York, metropolitan area with a population of almost 800,000 there were no persons willing, able and qualified to work as a gasoline station manager. But, that is not an issue subject to question by INS or the Court. *See e.g.,* the comments contained in *Castaneda-Gonzalez v. Immigration & Naturalization Service,* 183 U.S.App.D.C. 396, 401, 564 F.2d 417, 422 (1977) ("despite the paucity of data, the Labor Department approved Constaneda—Gonzalez' request for certification on March 23, 1970, only three weeks after it was received").

ticular job opportunity stated on the application for the alien employment certification." *Id.* He then noted that that job ceased to exist in July 1982 "thereby terminating the validity of the labor certification obtained for the position of manager." *Id.* The District Director gave as his reason for rejecting the petition that "the position as certified no longer exists." In affirming the decision of the District Director, the Assistant Commissioner also observed that, "[p]ursuant to 20 C.F.R. § 656.30(c)(2) the labor certification is no longer valid."

The question of the validity or invalidity of the labor certification is a matter which is delegated to the Secretary of Labor. While it is possible that the Secretary may agree with INS and rule that the certification is no longer valid, it is not clear that the Secretary would do so. Indeed, the DOL officer who issued the labor certification in March 1981, *see* Complaint Exhibit A, is the same officer who in August 1984, agreed with plaintiffs' counsel that the labor certification was still valid. *See* Exhibit to Plaintiffs' Memorandum of Law in Support of Motion for Temporary Restraining Order. The question of the continuing validity of the labor certification is one which must be submitted to DOL pursuant to Section 1182(a)(14).

*Fourth,* is whether the regulation, 20 C.F.R. § 656.30(c)(2), as written, is consistent with the statute, 8 U.S.C. § 1182(a)(14). The statute provides in part that the Secretary is to determine whether there are willing qualified workers at the time of application *"at the place* to which the alien is destined to perform such skilled or unskilled labor" (emphasis the Court's). The regulation states that the "labor certificate involving *a specific job offer* is valid only for a *particular job opportunity* and for the area of intended employment stated on the Application" (emphasis the Court's). Clearly, the regulation appears to be more restrictive than the statute.

As the Court has noted, the purpose of the labor certification procedure is to protect American workers. Of course, to do so, DOL must ascertain the nature of the job being offered and any skill involved in order to determine the availability of American workers and whether the alien's employment would adversely affect American labor. Once the job specification has been determined and the area designated and the labor certificate granted, there seems to be little reason to limit the certification to the *specific* job being offered. For example, if a labor certification is granted to allow an alien to work as a gasoline station manager at an Exxon station on John Street in Troy, New York, and he thereafter is offered a similar position at the Mobil station across the street, except for the need to insure that there is a valid job available for the skill certified, there seems to be no reason why the labor certification would change. This is because the fact that the alien would be employed at the Mobil rather than the Exxon station would not affect the certification since DOL is only certifying that there are not able and qualified American workers and further that the alien's employment would not adversely affect American labor. Given the above hypothetical, presumably, DOL would either issue a new certification or would continue the certification already granted. In this case, DOL's response to the letter written by plaintiff's counsel suggests that DOL would continue the certification already granted.

One last point must be made on the issue of the regulation. As stated, once the certification has been granted, INS is fully entitled to satisfy itself that the job is available, just as it is entitled to satisfy itself that the alien is qualified for the job notwithstanding DOL certification. The question raised here then is whether the regulations are in fact more restrictive than the statute. This issue should also be addressed by DOL.

*Fifth,* is the interpretation to be given to 20 C.F.R. § 656.30(c)(2) that, "[a] labor certification involving a *specific job offer* is valid only for the *particular job opportunity* and for the *area of intended employment"* (emphasis the Court's). The regulation was presumably written so as to be

consistent with the statute, Section 1182(a)(14). Does "specific job offer" and "particular job opportunity" refer only to the job at L & M Service Center on 471 Second Avenue, Troy, New York, or does it also refer to the job offer at MKB Getty Service Corporation at 32 Purtell Avenue, Latham, New York? Is the job opportunity at the latter location the same job opportunity because it involves the same job (gasoline station manager) and the same employer (Mohammed Kaderali operating under the name of L & M Service Center and later operating under the name of MKB Getty Service Corporation, neither being a partnership or corporation)? Is Latham, New York, in the same *area* of intended employment as Troy, New York?

The regulations involved are DOL regulations rather than regulations promulgated by INS and accordingly, it is the former agency which should interpret the regulations, not INS. Yet, in denying the petition, INS has specifically interpreted the DOL regulation in finding that the job has ceased to exist and the labor certification is no longer valid. The questions of interpretation are properly addressed to DOL consistent with the delegation made to that agency.

## V

To summarize, INS denied the petition for sixth preference visa on the grounds that the once valid labor certification was no longer valid. In reaching that determination, INS purported to interpret 20 C.F.R. § 656.30(c)(2). INS determined that the labor certification was no longer valid because the job at L & M Service Center at 471 Second Avenue, Troy, New York, no longer existed. No other grounds has been set forth for the denial. In basing its determination on those grounds, INS overstepped its bounds and purported to act in an area which lies exclusively with the Secretary of Labor. As a result, this case must now be remanded to the Attorney General and INS for further consideration. Upon remand, INS must consult with DOL. It is the responsibility of DOL to determine whether the labor certification is still valid. The third, fourth, and fifth issues, *see* Part IV, *supra*, are all properly addressed by DOL and not INS. Once DOL has responded, INS may then determine whether to grant the petition.

The Court makes no determination as to the interpretation to be given to the relevant statute or regulations or as to the action DOL should take with respect to the labor certification. Once DOL makes its determination on the question of the labor certification, INS may determine whether to issue the sixth preference visa. Nothing said in this Memorandum Opinion would preclude INS from either questioning the alien's qualification for the job he seeks, or from questioning whether the job in fact exists.

An Order has been entered remanding the case to the defendant for action consistent with this Memorandum Opinion. Pending a determination as to whether the petition for sixth preference visa should be granted or denied, INS shall take no action to deport Hassanali or his family.